NEW YORK,
Oct. 1812.

JENNER
v.
JOLIFFE.

JENNER *against* JOLIFFE.

THIS was an action of trespass on the case. The declaration
contained four counts. The first and second counts were in *tro-
ver* for a quantity of oak timber; the third was for the defend-
ant's attaching, by process out of the court of king's bench in *Que-
bec*, the timber of the plaintiff, and so negligently and carelessly
behaving, &c. that the timber was lost. The fourth count was for
a malicious prosecution of the plaintiff.

*Where goods are seized by virtue of legal process, and are in the custody of the law, trover will not lie for them. An officer intrusted by the common law, or statute, is liable to an action for negligence in the performance of his trust or duty; or for fraud or neglect in the execution of his office.*

*If an officer, having authority to attach the goods of a person, keeps them in an unsafe place, or exposes them to destruction, he is liable for the damage sustained: and it seems, that if a plaintiff, on a process of attachment, directs or causes an officer, so to act, as to misbehave in the execution of his office, and produce the loss or destruction of the goods in his custody, the party injured had his election to bring his action either against the principal or the officer.*

*Where A sued B. on a contract for the delivery of goods, and a settlement was made between them, and B. gave A. a receipt in full for the balance due for the goods delivered; this was held to be no bar to a subsequent action by B. against A. for a misfeasance, in regard to goods, part of the subject of the same contract, and not delivered, but lost, as B. alleged, by the misconduct of A*

NEWYORK,
Oct. 1812.

JENNER
v.
JOLIFFE.

The cause was tried at the *Clinton* circuit, in *July*, 1812, before Mr. Justice *Yates*. It was proved that *Jenner*, about the 18th *June*, 1808, came to the port of *Quebec* with a raft of timber. The plaintiff said to the defendant that he would deliver only 8,000 feet of timber to the defendant, unless he would give the then market price, which was 350 dollars per thousand, for the residue of the raft. The defendant, afterwards, caused the raft to be attached, and he, or the sheriff, put a deputy bailiff on the raft. While it was so in the custody of the bailiff, the plaintiff requested, or offered the bailiff to put it in a safe place, as it then lay in a dangerous one in case of a storm. The raft lay about a week, when a storm arose, and about 4,000 feet of the timber was lost. The place to which the plaintiff offered to remove the raft, was a secure one; and after the storm, the residue of it was removed to that spot. Before the storm, the defendant directed the bailiff not to move the raft; and when the plaintiff requested its removal, the bailiff went to consult the defendant, and on his return, said his orders were not to move it.

The defendant gave in evidence a contract, dated 9th *April*, 1808, by which the plaintiff and *C. Stafford*, of *Plattsburgh*, in *New-York*, engaged to deliver to the defendant, and another, in *Quebec*, during the month of *June*, from eight to twelve thousand cubic feet of white oak timber, or as much as their raft might contain, &c. &c. for which they were to be paid one shilling, *Halifax* currency, per cubic foot, on delivery, with any reasonable advance they might require on the arrival of the raft at *St. Johns*; one hundred pounds was to be paid by the party failing to perform. He also gave in evidence, authenticated copies of the proceedings in the court of king's bench in *Quebec*, to wit, 1. The writ of attachment issued the 15th *June*, 1808, out of the court of king's bench, for the district of *Quebec*, directed to the sheriff, commanding him to seize all the goods, chattels and effects of the plaintiff and *Stafford*, &c. and to summon them to appear before the said court, on the 20th *June*. On this writ a return was endorsed by the sheriff, stating that he had, by virtue thereof, seized 207 pieces of oak timber, belonging to *Jenner* and *Stafford*, and had summoned them, &c.; 2. An affidavit of *Joliffe*, previous to issuing the writ, which stated that *Jenner* and *Stafford* were justly indebted to him 149 pounds, *Canada* money, for money paid and advanced to them, to enable them to fulfil their said agreement, for

the delivery of the timber, &c.; that they brought two rafts of timber to *Quebec*, which they refused to deliver to him, according to the said contract, and he verily believed that they intended to sell and dispose of the timber, and to secure their effects, and depart from the province, with an intent to defraud him, &c.; 3. The declaration of the cause of action, which was annexed to the writ of attachment; 4. An account of 139 pieces of merchantable and 64 pieces of refuse timber, received by *Joliffe*, at the foot of which was a receipt in full, dated the 14th *July*, 1808, by the plaintiff to the defendant, for a balance due the plaintiff, after deducting the moneys advanced to the plaintiff, and a sum on account of the costs and expenses of the attachment. The defendant also produced the deposition of *E. Bowne*, the attorney of *Joliffe*, in *Quebec*, taken under a commission, proving the authenticity of the writ and documents, and the seals and signatures of the officers, &c. and that they were the officers, &c.; that a settlement took place between the parties, in the deponent's office, in *Quebec*, in *July*, 1808, by which the plaintiff agreed to deliver over to the defendant the timber which had been attached, and to perfect the contract before mentioned, and to pay 6*l.* on account of the costs and disbursements in the suit, which was accordingly done; and the defendant paid the attorney the costs of the suit against *Jenner* and *Stafford*, and directed him to discontinue the suit, which was done accordingly; that the settlement was voluntary on the part of *Jenner*, and advantageous to him, for if the suit had been continued, he would have been obliged to pay the full sum demanded, and all the costs.

*E. Chase*, a witness for the plaintiff, was offered, and objected to as interested; but being released, was sworn, and testified, that he did not understand that the settlement between the parties had relation to the lost timber; that he heard the plaintiff say to the defendant, after the delivery of the timber that remained after the storm, that he should see him another day and settle it. The witness was first sent to make the settlement, and the settlement contemplated was confined, as he understood, to the timber which remained after the storm; but he was not at the office of the attorney when the settlement was finally made.

The jury found a verdict for the plaintiff, for 1,519 dollars.

A motion was made to set aside the verdict, and for a new trial; 1. Because the timber being in the custody of the law, at the time, no action could be maintained; 2. Because there was a probable

cause for suing out the attachment; 3. Because the timber being in the custody of the law, any directions of the defendant to the officer could have had no, influence; 4. Because there had been a full settlement of the whole cause of action between the parties; and, 5. Because the damages were excessive, the jury having allowed for the lost timber a much greater sum per foot than the contract price.

Z. R. Shepherd, for the defendant, contended, that as the attachment and proceedings were agreeable to the laws of Quebec, and as the timber, after it was attached, was in the custody of the law, trover would not lie in such a case.

The count for a malicious prosecution cannot be maintained. There was sufficient evidence of a probable cause of seizure. By the refusal of Jenner to deliver the timber, there was a breach of the contract, and Joliffe had a good cause of action against him. Jenner was bound by his contract to deliver the whole raft at the contract price, though it contained more than 8,000 feet.

The third count for negligence cannot be supported. The property was attached by a sheriff, under legal process, and placed by him in custody of his bailiff, who was the servant of the sheriff, not of the defendant. The bailiff was bound to obey the directions of the sheriff, not those of the defendant. Before any application to the defendant, the bailiff refused to remove the raft. He, no doubt, acted pursuant to the orders of the sheriff; and if there was any negligence on the part of the bailiff, he alone was responsible.

Again, subsequent to all the proceedings, and to the loss of the timber, the parties made a full and complete settlement. In Brown v. M'Kinally,[*] it was decided that, where a party sued on a claim which he knows to be unfounded, voluntarily pays the money, he cannot recover it back in assumpsit, though he declares at the time he pays it, that he pays it without prejudice to his right, and meant to bring an action to recover it back. The present is a stronger case, and the plaintiff must be concluded by the settlement he has voluntarily made.

Again, the measure of damages was the contract price, and the jury have allowed more. The damages are, therefore, excessive. Besides, the plaintiff owned but half of the raft, and was not entitled to recover for the whole loss.

* 1 Esp. Cas.
279.

*Foot*, contra, contended, that it should have been proved that by the law of *Quebec*, the timber could have been attached for a breach of the contract; but admitting that it was regularly attached, and in the custody of the law, he relied on the decision of the court, (6 *Johns. Rep.* 9.) that the defendant was answerable for the negligence of the bailiff, who had the custody of the property.

*Per Curiam.* The plaintiff's right to recover must depend upon the count for the defendant's negligence and carelessness in keeping the plaintiff's timber under the attachment. The proofs in the case are a complete answer to the counts in *trover;* for it appears that the seizure of the timber was a legal seizure, under a writ of attachment, issued by the highest court of judicature of the province; and it is to be presumed that it was issued conformably to the laws of the province : besides, the settlement which actually took place, is a recognition of the validity of the attachment.

In every case where an officer is intrusted by the common law, or by statute, an action lies against him for a neglect of the duty of his office. (1 *Salk.* 18.) So for every fraud or neglect in the execution of his office. (*Lat.* 187.) If an officer, having authority to attach a man's goods, keep them in an unsafe place, or expose them to destruction, he acts contrary to the duty of his office, and will be liable in case they are destroyed. And where the plaintiff, upon a process of attachment, causes an officer so to conduct himself, as to misbehave in the execution of his office, and produce the loss or destruction of goods in his custody, the party has his election either to sue the principal or the officer. In applying this principle to the case before us, we are furnished with a very loose statement of facts. On what point the jury passed, it is impossible to say from the case. There is some evidence that the plaintiff requested the raft to be moved to a place of greater security, and that the defendant, by his interference, prevented it. If the defendant meant to set aside the verdict on this ground, we ought to have been furnished with the judge's opinion, and a more detailed statement. Making the necessary intendments in favour of every verdict, we cannot say there was not sufficient evidence to justify the finding. The settlement was for the timber actually delivered. The case of *Brown* v. *M'Kinally* (1 *Esp. Cas.* 279.) does not apply, because the *misfeasance* of the defendant would not have been a subject of inquiry upon any issue to be joined in

NEWYORK, that suit.   The objection that *Jenner* owned but half the raft, and
Oct. 1812.   was, therefore, entitled to recover for a moiety only of the injury,
CRAMER   is not supported by the case.   He was in possession of the raft,
v.
VAN ALSTYNE.   and is, *prima facie*, to be deemed the owner.   As to the excessive-
ness of the verdict, the contract price is not the criterion, and
there are no *data* from which we can calculate that the damages
are excessive.

Motion denied.(*a*)

(*a*) See S. C. 6 *Johns. Rep.* 9.