## GERALD & WIFE vs. BUNKLEY.

1. Where a stranger, after personating an intestate, whose estate has been administered and passed into the hands of the administrator of a deceased distributee, so far as to create an honest impression of their identity on the minds of many, who had known the intestate intimately from his youth, is about to leave the country and to prosecute by attorney his alleged right to the property, the administrator should be allowed, on final settlement, such reasonable sums as he has expended in instituting and conducting a criminal proceeding against him for the purpose of exposing the imposture, and thus protecting the estate.

2. An administrator, authorised by an order of the Orphans' Court to keep the personal estate together for ten years and to cultivate the lands of the deceased, is entitled to an allowance for reasonable expenses incurred in the erection of suitable and necessary buildings.

3. It is not the duty of an administrator to lend out the money of an estate, and if he does so without authority, it is such a conversion as will render him liable for the principal sum so loaned with interest, should it eventually be lost.

4. The Orphans' Court has not the power to follow the assets of an estate, which the administrator has invested in property, and to establish a trust in favor of an infant distributee, but in such case, the administrator, on final settlement, should be charged with the principal sum so invested with interest, and, if the property has been used for the benefit of the estate, he should be allowed therefor a reasonable compensation.

5. Such a settlement, however, could not deprive the distributee of his right of election, but he might afterwards go into equity to compel a conveyance.

Whether the administrator can resort to equity to compel an election— .Quere?

Error to the Orphans' Court of Montgomery.

This controversy arose on the final settlement of the estate of William D. Bunkley, deceased, of which his widow, now the wife of Pearly S. Gerald, was appointed administratrix, and of which she and Gordon Bunkley, an infant son of the deceased, were the sole distributees. The facts of the case can be understood by reference to the opinion.

Elmore, for the plaintiffs in error:

1. The general rule is that an administrator is bound to exercise such prudence and care as a judicious man would exercise in regard to his own affairs. But this rule is not imperative; it varies according to the circumstances of each case, and the good faith with which he acts is a consideration always to be regarded.—Baily v. Dilworth, 10 S. & Marshall, 404; Bryan v. Mullejan, 2 Hill Ch. (S. C.) 364; Capeheart v. Henry, 1 Hill Ch. (S. C.) 411; Donnell v. Oneill, 9 Ala. 734; Huson v. Wallace, 1 Richardson's Eq. 16-17; 2 Story on Equity, § 978.

2. Improvements or outlays made by the administrator will be allowed, when such as the court would have directed on application.—Ex parte Palmer, 2 Hill's Ch. 217; 2 Story's Eq. § 978, 1267-'71-'72-'73-'75.

3. Where executor bought negroes with the proceeds of the crops, and worked them on the plantation, the distributees disaffirming the purchase, he was held a joint owner and allowed his share of the crops, deducting rent for the land.—Frazer & Wife v. Vaux, Ex'r, 1 Hill Ch. 206. To the same effect is Bethea v. McCall, 5 Ala. 308.

BELSER & HARRIS, for defendant:

1. The charges for costs, counsel fees, &c., paid out on the prosecution of Barber, were rightfully rejected by the court.—Harris v. Martin, 9 Ala. 895; Oniel v. Donnell, ib. 734; Clay's Dig. 600, § 7—also, 482, § 36-'7; p. 237, § 4. It was no part of the administratrix's duty to institute a criminal prosecution against Barber, and the verdict and judgment on the indictment against him would not have been evidence for her if suit had afterwards been brought on the bond given to Parish, or if a direct proceeding had been instituted against her to recover the property supposed to belong to Jesse Bunkley.—1 Greenl. on Ev. 537; 1 Phillips on Ev. 336-'7.

2. The plain duty of an administratrix, *ordinarily*, is to receive the assets of the estate, to pay the debts of the deceased, and to pay over the residue, if any, to those entitled. She has no authority, unless authorised by will or order, to keep together the estate and work the slaves on the plantation, and if she does so it is at her own risk.—Willis, adm'r, v. Heirs of Willis, 9 Ala. 336; Benford v. Daniels, 13 Ala. 673; Steele v. Knox, 10 Ala. 608 ; Kee v. Kee, 2 Grattan, 116. To enable an administratrix to keep the personal and real estate of her intestate together, there are certain requisites which must be complied with, and they are clearly defined by statute and by adjudications on the same.—Clay's Dig. 198, § 30-'1-'2-'3-'7; Benford v. Daniels, 13 Ala. 671. And if an administratrix neglects these duties, or permits the ten years to elapse, she will be remitted to a court of equity for redress, if she have any remedy at all.—Benford v. Daniels, 13 Ala. 673; Steele v. Knox, 10 Ala. 614.

3. The charges for building the gin house and negro houses were also properly excluded. An administratrix is only entitled to remuneration for money expended on repairs absolutely essential to the preservation of the estate under her charge.

The record does not show that these improvements were necessary, nor that they could not have been erected from the materials grown on the plantation.—Myers v. Myers, 2 McCord Ch. 265; Green v. Winter, 1 Johns. Ch. 39.

4. The administratrix had no right to purchase either the lands of Allen and Barnett or those of Goldthwaite, or in any manner to charge the estate with them or their rents, or the negroes belonging to it with their hire, &c. Neither the common law nor the statute, which authorises such an estate to be kept together for a term not exceeding ten years, justified her in thus increasing the capital of the estate, without the sanction of the court. Having wrongfully made these purchases and *voluntarily* commingled her property with that of the estate, the Orphans' Court could not fairly separate it, and she must bear the loss in that tribunal at least.—Myers v. Myers, 2 McCord's Ch. 265; Kerr v. Boyd, 10 Ala. 154; Washburn v. Hall, 10 Pick. 429; Trecolthic v. Austin, 4 Mason, 29.

5. The administratrix was properly responsible for the money loaned to Whitman & Hubbard, and with the interest on it. The security on which the investment was made was not such as the law required her to take. Bond and security on real estate should have been had, or at least it should have been placed in the hands of safe men, and not in those of adventurous merchants.—Smith v. Smith, 4 Johns. Ch. 284 ; Holmes v. Craig, 2 Coxe's cases, 1; Harrison v. Mock, 10 Ala. 900 ; Powell v. Evans, 5 Vesey, 839; Bryant v. Craig, 12 Ala. 354; Powell v. Powell, 10 Ala. 900; Brazeal, adm'r, v. Brazeal's Dist. 9 Ala. 491; King v. Cab, 12 Ala. 598; Parker & Wife v. McGaha, 11 Ala. 521. An administratrix cannot sell property of the estate legally but by receiving from the purchaser "*bond with approved security*," and if this be so, much less ought the representative of an estate be permitted to loan out its funds *at her own volition* and merely take a promissory note to guarantee its return.—Clay's Dig. 223-'24, § 13.

6. The items paid for carriages, horses, &c., and for boot on exchange of them, were improper and not fit to be sanctioned. The commissions are intended to cover all the personal expenses contracted in the management of the estate, and the Judge of the Orphans' Court, on proper evidence, can increase or diminish these commissions, according to the facts of each case.—

Oniel v. Donnell, 9 Ala. 734; Van v. Van, 2 Paige, 287; Parker & Wife v. McGaha, 11 Ala. 521.

DARGAN, C. J.—It is the duty of an administrator or other trustee to defend the trust estate from all unjust demands made against it, and he should employ the proper and reasonable means to make the defence *effectual*. As this is the duty of a trustee, it follows that the necessary and reasonable expenses incident to the litigation must be borne by the trust estate, and not by the trustee in his individual capacity.—Coopwood et al. v. Wallace, 12 Ala. 790; 15 Ala. 335. This position will not be denied, and the only question that can be made in regard to the expenses paid by Mrs. Gerald in prosecuting Barber, is, that they were unnecessary or unreasonable. We are, however, fully satisfied from the facts exhibited by the record, that the prosecution and conviction of Barber for falsely pensonating Jesse Bunkley and demanding the property that had been paid over to William Bunkley by Parish, the guardian of Jesse, on the supposition of his death, was the only mode of defence that could have been adopted to save the estate of William Bunkley. After Barber had succeeded in the village where Jesse Bunkley was raised in creating the belief that he was Jesse Bunkley, even in the minds of those who had known Bunkley from his youth, had he been permitted to leave the State and to prosecute his demand by an attorney, we do not see how he could have failed of success. To procure the proof that he was Elijah Barber, and not Jesse Bunkley, was therefore indispensably necessary. This could only be done by bringing him in the presence of those who knew him to be Elijah Barber. It was therefore necessary to arrest him to prevent his leaving the State, that the witnesses might see and inspect him and thus be enabled to speak with certainty who he was. Even on the trial of the indictment, we infer from the facts stated in the record, that it was doubtful whether the evidence would show him to be Elijah Barber or Jesse Bunkley, for many of the acquaintances and friends Bunkley deposed that he was Jesse Bunkley, and this too after they had had a full opportunity to examine and interrogate him. Under such circumstances the administratrix pursued the only course that could have been adopted to protect the estate from the unjust demand of

Gerald and Wife v. Bunkley.

Barber, and consequently the estate must bear all the reasonable expenses of the prosecution. Whether the amount paid by the administratrix was reasonable, we do not feel at liberty to determine in the present condition of the cause, for it does not appear that the Orphans' Court has ever acted on this question, but simply rejected the whole item on the ground that the estate was not liable to pay any part of it. In this the court erred; the administratrix was entitled to a credit for the amount she had paid out, if such amount under all the circumstances was reasonable, of which it was the duty of the court to judge,

2. Mrs. Gerald, the administratrix, obtained an order of the court to retain the personal estate together for ten years, and also to retain the possession of the real estate. She employed the slaves in cultivating the land for the benefit of the distributees. It became necessary to build negro houses and also a gin house, as those left by the deceased had become rotten and dilapidated; she asked to be allowed the reasonable expenses incurred in erecting those buildings, which was refused. It is true that at common law an administrator could not claim to be remunerated for expenses in building houses on the estate of the deceased, but the powers of an administrator at common law and under our statutes are in many instances widely different. In this State, upon good cause shown, an administrator may be allowed to keep the personal estate together and to retain the possession and cultivate the land for the term of ten years, reserving the widow her right of dower.—Clay's Dig. 198-'99. When the administrator has obtained such an order it becomes his duty to manage the estate in a husband-like manner. He should conduct the estate to the best advantage for the interest of the distributees, and should observe the same care and diligence in the management of it that a prudent man would observe in reference to his own. Not only common prudence but common humanity demands of the master that he should provide suitable houses for his slaves, and a gin house is absolutely necessary to a cotton plantation. An administrator who has obtained the right to keep the estate together for the space of ten years, must therefore be allowed the expenses of such buildings, when necessarily erected by him.

3. It also appears that Mrs. Gerald without any order of

court lent to Whitman & Hubbard $3210, taking their note with **J.** Wyman for security. Whitman & Hubbard as well as Wyman were merchants then in good credit, but afterwards failed, and the debt is lost. The money lent belonged to the estate, and she asks a credit of this sum in the settlement of her accounts. In the case of Dean & Wife v. Rathburne, adm, 15 Ala. 328, we said that the correct rule to be extracted from all the cases is this: If an executor or other trustee exercises good faith and ordinary diligence, and acts within the scope and in the line of his duty, he is not responsible although loss befall the estate. If, however, he assumes to act without the scope of his authority and beyond the line of his duty, he then acts upon his own responsibility and must be held responsible for any loss that may befall the estate from such acts. We think the rule recognised in the case refered to is correct in principle, and that it is sustained by authority.—See Bond v. Clough, 3 Mylne & Craig. 486. The first question therefore to be ascertained is, did the administratrix act within the scope of her authority and in the line of her duty in lending the money to Whitman & Hubbard? We know of no principle of law that makes it the duty of an administrator to lend out the money of the estate. In the case of Webb v. Conn, (Littell's Sel. Cases,) it is said that an administrator is not required by any law to lend out the money of the estate he represents, and therefore is not chargeable with interest, by merely showing that the money could have been loaned at interest without inconvenience. To the same effect is the case of Kellar, ex'r, v. Bula, 5 Monro, 578—also see Karr **v.** Karr, 6 Dana, 3; The State v. Johnson, 7 Blackf. 529; and 1 Vernon, 197; 2 Ver. 548. As the law does not require of an administrator who has only such authority over the estate as is derived from his letters of administration, to lend out the money, if he assumes the authority to do it, he cannot be said to be acting within the scope of his authority or in the line of his duty, but must be considered as acting upon his own responsibility, and must be held liable for both principal and interest, for it is well settled that if an executor or other trustee uses the money of the trust estate, he is chargeable with interest, and that he may have applied it to an unprofitable use cannot change the rule or exempt him from paying interest. Mrs. Gerald was therefore properly charged with both the principal and interest

of the sum loaned by her to Whitman & Hubbard. Whether or not an administrator in this State may not apply to a court of chancery or to the Orphans' Court and obtain authority to lend out the money in his hands belonging to the estate, we will not stop to enquire, being satisfied that if he assumes to lend it out relying on his authority as administrator alone, it may be considered by the distributees and those interested in the estate as a conversion of the money to his own use, and that he may be charged with both principal and interest, whether the money be lost or not.

4. It was also shown that the intestate did not leave land sufficient to employ his force as profitably as it might have been, and that the administratrix purchased with the money of the estate two tracts or parcels of land which have been cultivated by the slaves, and which appear to have been of considerable value to it. The administratrix requested that she should be allowed a credit for the amount she paid for the lands, which was also refused. She then requested a credit to the extent of the value of the rents of the land, which was also refused, and the court charged her with the money she paid for the land with interest thereon, without making her any allowance for the use or profits of the land. That the court erred in charging her with the amount paid for the land with interest, without making any allowance for the use of the land by way of rent, is manifest. But I have had much difficulty in coming to a conclusion what course the Orphans' Court should have pursued in reference to this question. As the lands were purchased with the funds of the estate, the infant distributee has an unquestionable right to elect whether he will take the land or whether he will claim the money. He certainly is not entitled to both, but he has the right to choose between the land and the money. Can the Orphans' Court elect for him and order a conveyance during his minority? The Orphans' Court has full jurisdiction, it is true, to make final settlements of estates in the hands of executors and administrators, and to decree the amount ascertained to be due to be paid to those entitled, but it has no jurisdiction to establish a resulting trust in favor of the distributees, nor to order the executor or administrator to convey to them lands purchased with the assets of the estate. No such jurisdiction is confered on those courts by statute, and therefore they do not possess it.

They can exercise only such authority and are possessed of only such jurisdiction as is confered upon them by statute. But the conversion of the money by the administratrix into land cannot deprive the Orphans' Court of jurisdiction to order and decree a final settlement of the estate.   This power the Court has, and the administrator cannot oust the court of jurisdiction by a conversion of the assets.   Mrs. Gerald was therefore correctly charged with the amount of money paid for the land with interest thereon.   But as the estate has been benefited by the use of the land, she should have been allowed a credit to the extent of a reasonable rent for the land, for inasmuch as the distributee is not entitled to both the land and the money, he can-not claim both the interest on the money and the use of the land.   We admit that a settlement made in conformity with this view will, as between the administratrix and the distributee, leave in the latter the right to elect whether he will not take the land in the stead of the money; and he may still file his bill in equity for the purpose of having the land decreed to be his and to compel a conveyance to be made to him, and it is a question well worthy of consideration whether the administratrix cannot resort to equity to compel him either to accept the land or to re-nounce his right to elect whether he will take it or not.   Be this as it may, we are satisfied that a court of equity alone has the power to adjudicate this question, and that the Orphans' Court has not the jurisdiction to follow the assets of an estate that may have been invested in property and to establish a trust in favor of the distributees.

The view we have taken of the land applies also to the slaves purchased by Mrs. Gerald.   The court should have charged her with the amount paid for them with interest thereon, and given her a reasonable credit for the services they rendered the estate, for we can perceive no difference in this respect be-tween the purchase of land and slaves.

In reference to the carriage purchased by Mrs. Gerald and the expenses incurred at the taverns, from time to time, we think they do not form a proper charge against the estate, and must be borne by her alone.   If she could show that she vis-ited Montgomery for the purpose of attending to the business of the estate, and that it required her to remain in town for a spe-cified time, we would not say that her reasonable expenses for

the time she was required to stay on account of the business of the estate should not be allowed her; but if her remaining in Montgomery was connected with her own pleasure, or to avoid the loneliness of a country life, she must bear the expenses.

Let the decree be reversed and the cause remanded for further proceeding.