WILLIAM C. BEVINS AND OLIVER P. EARLE, SURVIVING PARTNERS OF THE FIRM OF BEVINS, EARLE & CO., ASSIGNEES, &c., WHO SUE FOR THE USE OF OLIVER P. EARLE, PLAINTIFFS IN ERROR v. WILLIAM B. A. RAMSEY, ROBERT CRAIGHEAD, JAMES P. N. CRAIGHEAD, THOMAS W. HUMES, AND JAMES McMILLAN, ADMINISTRATOR OF ANDREW McMILLAN, DECEASED.

Where a clerk of a court was sued upon his official bond, and the breach alleged was, that he had surrendered certain goods without taking a bond with good and sufficient securities, and the plea was, that the bond which had been taken was assigned to the plaintiffs, who had brought suit, and received large sums of money in discharge of the bond, — this plea was sufficient, and a demurrer to it was properly overruled.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of East Tennessee.

Ramsey was clerk of the Chancery Court, held at Knoxville, Tennessee. Bevins and Earle were citizens, the former of Arkansas, and the latter of South Carolina.

The action was one of debt, upon the official bond of Ramsey, and his securities.

The declaration states that Ramsey was appointed clerk and master of the Chancery Court, in the declaration mentioned; and, on the 11th April, 1836, delivered to Newton Cannon, Governor of Tennessee, his bond, with the other defendants, his sureties, in the penalty of $10,000, conditioned to discharge the duties of the office of clerk and master, according to law.

That Ramsey failed to discharge the duties of that office:

1. That upon the dissolution of an injunction, awarded on a bill attaching certain property brought by the plaintiffs against Chase & Bowen, which property had been put in the hands of Ramsey, clerk and master, as receiver, he was ordered to surrender the property attached on Chase & Bowen, giving bond and security to abide the decree; that it was the duty of Ramsey, as clerk and master, to take that bond; that he did not take their bond with sufficient securities, but, on the contrary, took the bond of Chase, with Thornburg and others, as sureties, who were then wholly insufficient for the performance of the judgment and decree; that plaintiffs finally got a decree for $6,303.64, which is still unpaid.

2. That in the suit of Bevins, Earle, and Brown *v.* Chase & Bowen, the property attached in, which had been placed in the hands of Ramsey, clerk and master of the court, as receiver, he was ordered to surrender the property attached to Chase & Bowen, on their giving bond and security to abide by and perform the decree; and under that order it was the duty of Ramsey, as clerk and master, before surrendering the goods, to take a bond from Chase & Bowen, with sufficient security conditioned according to the order. But Ramsey did not take such bond with sufficient security, but wholly neglected and failed so to do, and gave up the property without so doing. And plaintiffs afterwards obtained a decree against Chase & Bowen, for $6,303.64, which is still unpaid by said Chase & Bowen.

3. That in the suit, and under the order above prescribed, it was the duty of Ramsey, as clerk and master, to take such bond as the order directed to be taken before surrendering the property; yet Ramsey did not take bond and security from Chase & Bowen to abide and perform the decree, but surrendered the property without taking bond and security; and a decree was afterwards rendered for $6,303.64 in favor of the plaintiffs.

4. That in the suit, and under the order aforesaid, it was the duty of Ramsey, as clerk and master, to take from Chase & Bowen, bond and sufficient security to abide and perform the decree; yet he wholly failed and neglected to take bond and sufficient security, but surrendered the property held by him as

receiver, without taking bond and security as required by the order; and afterwards a decree for $6,303.64 was in that suit rendered in favor of plaintiffs, which Chase & Bowen have failed to perform, and which yet remains due.

By reason of the premises, the bond of Ramsey, as clerk and master, became forfeited, and was assigned by the successor of the obligee, Governor of Tennessee, by his written assignment, on a copy of the bond, to plaintiffs, on the 22d July, 1847.

The defendants appeared and pleaded:

1st. That they had performed the condition of the bond.

2d. That it was no part of the right or duty of Ramsey, as clerk and master, to take the bond of Chase & Bowen with good and sufficient security or otherwise, but it was the duty of the receiver.

On these pleas there is an issue of fact.

3d. That the filing the bill of the plaintiffs against Chase & Bowen, the attachment awarded, and the appointing the receiver, the order requiring the bond and the final decree, were null and void for want of jurisdiction in the court of chancery, the remedy being properly at law.

4th. That after the order on the declaration mentioned, and before the surrender of the property, Ramsey did take a bond conditioned as required by the order, which bond was, on application of Bevins, Earle & Co., by the court, ordered to be surrendered, and was accepted; and under it they have recovered $2,000.

5th. That the defendants do not owe the debt.

7th. That at the date of the bond, the obligors and obligees were citizens of Tennessee, and the obligors and the obligee and his successors, have all continued to be citizens of Tennessee.

8th. That at the time of the cause of action the plaintiffs and defendants were citizens of Tennessee.

To these pleas the plaintiffs demurred.

To the 6th plea: that before surrendering the property, Ramsey took bond conditioned as required by the order; and in so doing, and judging of the sufficiency of the sureties, he acted *bonâ fide* in the exercise of his best judgment.

The plaintiffs replied, that Ramsey did not take bond from Chase & Bowen with sufficient surety, as was his duty.

To this replication the defendants demurred.

The court overruled the demurrers of the plaintiffs, and sustained the demurrer of the defendants to the replication to the sixth plea and to the declaration, and gave judgment for the defendant on the whole record.

In this state of things, the record was brought up to this court.

It was argued by *Mr. Davis,* for the plaintiffs in error, and *Mr. Lee,* for the defendants, with whom was *Mr. Cullom.*

*Mr. Davis,* for the plaintiffs in error, contended that, under the declaration, they could recover on one of the two following propositions:

1. That the goods attached are alleged to be in the hands of the defendant Ramsey, in his character of clerk and master, according to the legal effect of the declaration; and that, therefore it was his duty to take good bond and surety before surrendering the goods. Caruthers and Nicholson, St. Tenn. 224, 162, 155; (Acts 1797, c. 22, § 3; 1794, c. 1; 1833, c. 47); Waters *v.* Carroll, 9 Yerger, 102, 108, 110; McNutt *v.* Livingston, 7 Smedes & Marsh. 641.

2. That if the legal effect of the declaration be to charge that the goods were in the hands of Ramsey as receiver, and not as clerk and master, then that it was his duty, as clerk and master, to approve the bond on which the goods were ordered to be surrendered by him as receiver; and that, having approved a bad bond, in his capacity of clerk and master, he is liable in that character for the consequences of such approval — the loss following from the surrender of the goods by him as receiver, on the faith of the bond improperly approved by him as clerk and master.

This may be maintained on the following grounds:

(*a.*) The declaration distinctly avers that, in point of fact, it was the duty of Ramsey, as clerk and master, under such an order as that for the surrender of the goods, on bond to be given, to take the bond; and this allegation has been traversed, and an issue of fact is now pending on it; and under this it will be competent for the plaintiff to show such to have been his duty: 1st, by adducing the rules of court; or, 2d, showing the practice and course of the court in like cases. United States *v.* McDaniel, 7 Pet. 1; United States *v.* Fillebrown, 7 Id. 28; Duncan's Heirs *v.* United States, 7 Id. 435; United States *v.* Arredondo, 6 Id. 714; Minor *v.* Mechanics Bank, Alex. 1 Id. 46; Williams *v.* United States, 1 How. 290.

(*b.*) It is clearly a part of the duty of the master to approve such bonds. The bond is an official one, to be filed in court, not kept by the receiver. The receiver is to act only on such a bond as the proper officer of the court shall have approved. It is the duty of the receiver not to surrender the property till such a bond, properly approved, be filed. The order does not give

the receiver the right, nor throw on them the duty of approving the bond. He is ordered to surrender the goods when such a bond is given, but is silent as to the person by whom it is to be taken and approved. That person is, plainly, from the nature of his office, the clerk and master. See books above cited, and 1 Smith, Ch. Pr. 9.

If it be supposed that the declaration contemplates only one of those grounds of liability; then,

3. The question, whether Ramsey be charged in his capacity of clerk and master, or as receiver, cannot, as is admitted by the brief of the defendants in error, be now the subject of inquiry on these demurrers; since "this supposed error in pleading is brought to an issue of fact, which is still undisposed of."

We are, therefore, entitled to charge Ramsey, on this declaration and at this stage, with the duty of taking or approving the bond as clerk and master.

4. We submit, that the bond of the clerk and master is assignable, under the Tennessee statutes. Caruthers and Nicholson, 162, 155; Acts 1794, c. 1; and 1797, c. 22, § 3.

5. That the assignment here    not a copy of the bond, but the bond itself; the assignmen.. happening to be indorsed or written on a copy of the bond.

6. The demurrer to the 3d plea must be sustained. The plea attempts to inquire collaterally into the regularity of the proceedings in the injunction suit. It does not raise the question of the jurisdiction of the tribunal; but whether the relief sought were properly to be had at law or in equity. To call that a question of jurisdiction, in order to open the case to collateral inquiry, is to misuse legal language.

7. The plea of *nil debet* is clearly had in reply to breaches assigned on a bond with collateral condition. Sneed *v.* Wister, 8 Wheat. 690.

10. The fourth plea contains no answer to the declaration in substance; and what it does contain is badly pleaded.

The gravamen of the action is the neglect to take any bond, or if any were taken, the taking of insufficient surety.

This plea avers the taking of a bond which it sets forth, and so far it is good. But it does not aver the sureties to have been good or sufficient; and, therefore, it does not in that meet the declaration.

That the plaintiffs sued on the bond, does not show it to have been sufficient, but is, perhaps, the best way of proving its insufficiency. If it were good for part, and not all of the decree, the plaintiffs were entitled to have it, and get what they could, and perhaps bound so to do; but then they were at liberty to sue the officer, likewise, for his neglect in approving bad sure-

ties, or surrendering the property without taking good sureties. It was no case of election, where the suing on the bond concluded the plaintiffs' right to indemnity for its insufficiency.

11. If the replication to the sixth plea be perhaps not very formal, it is as good as the plea; and the plea itself is clearly bad on general demurrer.

The plea avers, 1st, that, taking of bond with sureties, according to the order; and, 2d, that in taking bond, Ramsey acted *bonâ fide,* and in the exercise of his best judgment. But,

1st. To meet the declaration, the defendant was obliged to aver the taking of bond as a performance of one of the duties provided for in the bond on which the suit was brought; but the bond should have been so stated or pleaded as to enable the court to judge of its conformity to the order of law. The plea does not state to whom it was payable, to whom it was delivered, what were its terms; its date, its condition, who were the sureties, nor who were parties to it.

2d. Nor does the plea aver that the sureties were sufficient at the date of the bond; nor that they were believed to be sufficient by Ramsey; nor that he made them swear as to their sufficiency. It merely avers, that he acted *bonâ fide,* and to the best of his judgment; but does not say what he did, nor on what he judged, nor that he took any means to inform his judgment. On that plea, the court must take his ideas of *bona fides* and his judgment as conclusive. Minor *v.* Mechanics Bank, Alexandria, 1 Pet. 46, 49, 71, 66; 4 Taunt. R. 34; Wise *v.* Wise, 2 Levinz, 152; Steph. Pl. 406; 1 Chitty, Pl. 567, 573; 1 B. & P. 638; Co. Lit. 303, *b.*; Finley *v.* Bochin, 3 G. & J. 42, 51; Hughes *v.* Sellers, 5 H. & J. 432; Townsend *v.* Jemison, 7 How. 706, 722; 4 G. & J. 395, 401; McNutt *v.* Livingston, 7 Smedes & Marsh. 641; McAlister *v.* Scrice, 7 Yerger, 277, 278.

But the replication to the sixth plea may well be considered as a traverse of one of the two material allegations of the plea; for the plea alleged taking bond, without stating the parties; and the replication denies the taking bond with the proper parties, as well as the taking of sufficient surety.

The counsel for the defendant in error contended, that there is no rule of pleading better settled than that a demurrer reaches the first error in pleading; and, if it were universal in its operation, it might be contended for successfully, that this declaration shows on its face that the defendant Ramsey acted as receiver in the chancery case set forth in the declaration, and as such was not liable, in his official character of clerk, but in his individual capacity, as commissioner of the court. See 9

Yerger, 102. There are, however, some exceptions to this rule; and amongst others is embraced the case where a supposed error in the pleading is brought to an issue of fact, which is still undetermined; we are therefore precluded, perhaps, from the argument of the point just suggested in this stage of the proceedings. There are two objections to the declaration, which are brought up by the demurrers, either of which are fatal. 1st. The bond of a chancery court clerk is not made assignable by the statutes of Tennessee; and, 2dly. If it is, the assignment must be made of the original bond, and not of a certified copy. It will be seen, by reference to the act of 1794, (see Nich. & Car. pages 155, 147,) that the bonds of the Circuit and County Court clerks are both made payable to the governor, and assignable in cases of default; but the act of 1797, (see Nich. & Car. 162,) which requires a bond from the Chancery Court clerk, does not make it assignable, and it remains as at common law. In confirmation of this view of the case, the court is referred to the case in 9 Yerg. p. 102, where the suit was instituted in the name of the governor. Certainly, there is no statute in Tennessee authorizing the assignment of a copy of a bond, as set forth in this declaration. It is true that profert may, by the statutes, be made of a copy, as the original remains in the office, but the assignment must be of the original bond.

The fourth plea of the defendants was a good and sufficient answer to the declaration, for several reasons. The law of Tennessee does not impose upon clerks and masters in chancery, in express terms, the duty of requiring bonds in cases of the dissolution of injunctions or judging of the sufficiency of the sureties thereto; the obligation arises simply from the order or interlocutory decree delegating him to this power by the court. It is exactly on a footing with any other requisition made upon him by the chancellor in any cause, such as selling property, taking testimony, &c.; he is bound to perform the duty and make report thereof, and if no exceptions are filed by the parties, they are absolutely concluded, unless in cases of fraud. It would be hard indeed, if, after two years from the execution of an interlocutory decree, a clerk could be rendered liable for its faulty performance, when, perhaps, both the means of rectifying his error or disproving it would have passed away forever. The power is delegated by the court to its officer, and when he performs the duty and makes report of his action, and it is confirmed, the rights of the parties are fixed, and neither of them can go behind the decree, unless some fraud should intervene.

If we should be mistaken in this view of the case, certainly the surrender of the bond to the complainants, after the obten-

tion of their decree, their institution of a suit upon it, and obtaining judgment, execution, and part satisfaction of their debt, do constitute an election of their remedy, and a confirmation of the act of the clerk, which would estop them from suing him for neglect of duty. This question has been expressly decided in New York, (see 1 Comstock, p. 433); and that, too, not in a case where there was a faulty performance of duty on the part of the clerk, but where he had clearly exceeded his powers, and committed an illegal act. It is in consonance, too, with the general rules adopted by the courts in regard to the responsibility of other public officers. If a sheriff, on the execution of bailable process, should take the notes or property of the defendant in the process, and discharge him out of custody, although the discharge is illegal, and renders the sheriff liable for escape, yet, if the plaintiff accept the notes or property, he is foreclosed from his remedy against the sheriff. See 2 B. & P. 151; 6 Cow. 465; and 4 Campb. 46. The bond of the defendants, in the chancery case, was made payable to the complainants, and they, by their acceptance of it, and recovery of judgment, have converted it into a security of a higher character, and made it their own; thus disabling the defendant Ramsey from pursuing any recourse he might have had on the property originally attached, or the parties to the bond.

It may be urged, in answer to the authorities adduced, that they were cases of an illegal exercise of authority by public officers, and that these acts must be disavowed *in toto* by the parties interested, or their acceptance would conclude them; but in the case now at issue, the act of the clerk was *primâ facie* legal, and the only mode of testing the insufficiency of the bond was by pursuing the obligors to insolvency. It will be seen, by reference to the cases themselves, that it was admitted by the counsel, that acts of omission could be cured by affirmance; and the only dispute there was, whether the same rule should be applied to cases of illegal exercise of powers, and the admission is true on principle. If the clerk is liable here at all, it must be on the ground that the bond was defective at the time of its reception; the complainants in the chancery suit, then, had the right of exception; if they did not except, and any right of action still remained to them, it must have been perfected on the obtention of their decree, and that was the period for their election.

The demurrer to the sixth plea was not sustainable, and properly overruled; the plea was a full answer to the declaration, and should have been negatived. The clerk of the court, whether acting ministerially or judicially in the reception of the bond, was not an insurer; he was only bound to act *bonâ fide*

and with reasonable discretion. See 7 Smedes & M. 641; 7 Yerg. 276.

Mr. Justice CATRON delivered the opinion of the court.

The defendant, William B. A. Ramsey, and his sureties, were sued on an official bond given by Ramsey as clerk of the Chancery Court held at Knoxville, Tennessee. The condition of the bond declares that the clerk shall "truly and honestly keep the records of said court, and discharge the duties of said office, according to law ;" and the declaration alleges that said Ramsey did not truly and lawfully discharge the duties of his office, in this, that Bevins, Earle & Co. filed their bill in equity in the Chancery Court at Knoxville against Chase & Bowen, and that certain goods of theirs were attached, and put into the hands of said Ramsey, as receiver ; and that by an order of court the injunction was dissolved, and the receiver, Ramsey, was directed to surrender the goods to Chase & Bowen, "upon their entering into bond with security to abide by and perform the judgment and decree of the court upon final hearing of the cause, if made against them ;" and that by virtue of the order it became the duty of Ramsey, as clerk and master of said court, to take a bond as above prescribed. Nevertheless, he did not take from Chase & Bowen their bond, with sufficient sureties thereto, but, on the contrary, he took certain sureties, (five in number,) who were wholly insufficient to perform the decree of the court, and on said insufficient bond and security surrendered the goods to Chase & Bowen ; and that afterwards, on a final hearing, a decree was rendered against Chase & Bowen in favor of Bevins, Earle & Co., for the sum of $6,303.64, with interest thereon, which remained unpaid.

The second and third breaches aver that Ramsey surrendered the goods without taking any bond, "with good and sufficient sureties," from Chase & Bowen ; and,

The fourth breach avers, that no bond whatever was taken from Chase & Bowen, on the delivery of the goods to them.

The defendant relied on several pleas in defence, only two of which, the fourth and sixth, it is deemed necessary to notice. The fourth plea sets out the order dissolving the injunction, and the bond taken by Ramsey from Chase & Bowen, and their five sureties, and avers that, after the final decree was made against Chase & Bowen, the bond was, on the application of Bevins, Earle & Co., by order of the court, surrendered to them by the clerk and master, and was accepted by them ; and under and by virtue of said bond, Bevins, Earle & Co. have demanded and brought suit against and received of the sureties in said bond large, sums of money; to wit, two thousand dollars, part and parcel of the penalty and condition of said bond;

which were demanded, and received on, and in discharge of, said bond.

The sixth plea avers that the bond taken by Ramsey, as clerk and master, was for ten thousand dollars, and was in due form; and that in judging as to the sufficiency of the sureties, and in surrendering the property, said Ramsey acted *bonâ fide*, and in the exercise of his best judgment.

To this plea the plaintiffs replied, reaffirming that said Ramsey had not taken bond with good and sufficient security, as was his duty; and to the replication there was a demurrer.

As the declaration did not charge the clerk with bad faith, and the presumption of good faith being *primâ facie* in his favor, from the face of the bond, taken by him, neither the plea or replication could be of any force, because in their legal effect they are the same as that of the declaration; and so the court below held, and, going back to the declaration, declared it bad; and secondly, overruled the demurrer to the defendant's fourth plea. The plaintiffs were offered the liberty to amend their declaration and pleadings, but this they declined doing, and final judgment was rendered against them. Whether it was necessary to aver in the declaration that insufficient security was taken wittingly and knowingly, and consequently in bad faith, we do not propose to discuss, as it is a question more appropriately belonging to the State courts than to this court. But as judgment was given against the plaintiffs on the fourth plea, and as that judgment is conclusive, if the plea is good, we will consider that plea. The demurrer admits that Bevins, Earle & Co. obtained the bond of Chase & Bowen and their sureties; that they sued the sureties on it, and received of them two thousand dollars, part of the penalty; and which sum was received in discharge of the bond; whether the money was obtained by judgment or compromise, does not appear, nor is it material.

Chase & Bowen were principals to Ramsey, if he was in default for neglect of official duty; and so were the sureties to the bond responsible to him should he be compelled to pay in their stead. The clerk was the last and most favored surety, and if forced to pay the debt, he was entitled to all the securities Bevins, Earle & Co. had, to remunerate his loss; and, in such event, he would have been entitled to the bond on Chase & Bowen, and their sureties. And in the next place, it is manifest, that Ramsey cannot be in a worse situation than if he had been a party to the bond, in common with the other sureties; and in such case, it must be admitted that he would stand discharged.

We concur with the Circuit Court that the fourth plea was a good defence, and order the judgment to be affirmed.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the district of East Tennessee, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the. same is hereby, affirmed with costs.