## JAMES LICK *v.* JEROME MADDEN *et als.*

DUTY OF CLERK IN ISSUING WRITS.—While the Clerk of the District Court is bound to issue writs of attachment in the order in which they are demanded, yet if the party who makes the first demand is not in attendance to receive his writ when completed, the Clerk is not bound in the meantime to delay the issuing of other writs against the same party.

IDEM.—When the Clerk has prepared for delivery the writ first demanded, he is bound to issue the writ of the next comer; and if in such case the first comer is not there to receive his writ, and for that reason the next comer first delivers his writ to the Sheriff, and by that means acquires a priority, and the first comer loses his debt, the Clerk is not liable.

IDEM.—If the Clerk first issues the writ of attachment secondly demanded, but if, notwithstanding, he has the writ first demanded prepared and ready for delivery as soon as it is called for, he is not liable for the damages sustained by the first party because the second obtains the first levy.

LIABILITY OF PUBLIC OFFICERS.—Although public officers should be made to answer in damages to all persons who may have been injured through their malfeasance, omission, or neglect, but if the damages would have been sustained notwithstanding the malconduct of the officer, or if the injured party has by his fault or neglect contributed to the result, the officer cannot be held responsible.

CONFLICT OF EVIDENCE.—If the finding of the Court is contrary to the weight of evidence, yet if there is some evidence that sustains the finding, the judgment will not be disturbed by the appellate Court.

APPEAL from the District Court, Sixth Judicial District, City and County of Sacramento.

The facts are stated in the opinion of the Court.

*Geo. Cadwalader*, for Appellant, argued that as the writ of the creditor who made the second application was in fact issued before the writ of the first applicant, the Clerk became liable for the damage, even if the first applicant did not call for his writ in time to procure the first levy; and cited *Miller v. Wilson*, 24 Penn. 114.

*Moore & Alexander*, for Respondents, argued that as the writ of Lick was ready for delivery when called for, the Clerk was not liable for first delivering the writ of the second applicant.

By the Court, SANDERSON, J.:

This is an action upon the official bond of the defendant Madden, to recover damages sustained on account of his failure to perform his duty while holding the office of Clerk of the District Court of the Sixth Judicial District, in the matter of issuing a writ of attachment, at the suit of the plaintiff against Lady Adams Company. The case has been here before, and will be found reported in the twenty-fifth volume of the Reports of this Court, at page two hundred and two. It then came up upon a judgment in favor of the defendants, based upon a demurrer to the complaint for insufficiency. The *gravamen* of the action was that the plaintiff, on a day named, filed in the office of defendant Madden a complaint in an action by him against Lady Adams Company, accompanied by an affidavit and an undertaking for an attachment, and demanded a summons and a writ of attachment forthwith. That thereafter, Eggers & Co. also filed a complaint, affidavit and undertaking in an action by them against Lady Adams Company, and demanded a summons and attachment forthwith. That notwithstanding the prior right of the plaintiff, the defendant Madden issued process in the latter action first, and delivered the same to the attorney of Eggers & Co., whereby Eggers & Co. were enabled to secure a levy upon the property of Lady Adams Company in advance of the plaintiff, and that, by reason of the premises the plaintiff lost the greater part of his claim. We then held that it was the official duty of the defendant Madden to have issued the attachments in the order in which they were demanded, and that his failure to do so was actionable under the statute in relation to the duties of County Clerks, (Stats. 1850, p. 262, Sec. 9,) and also at common law, and that the complaint was, therefore, sufficient. We accordingly reversed the judgment and remanded the case with leave to answer. A trial upon the merits has since been had, resulting in favor of the defendants; and the case now comes

27

here on an appeal from the judgment and an order denying the plaintiff's motion for a new trial.

The case was tried without a jury, and the Court found that the plaintiff's action against Lady Adams Company was commenced at twenty minutes before two o'clock P. M. of the 10th of January, 1861, by depositing in the office of the defendant Madden a complaint, affidavit, and undertaking, with a request that a summons and attachment be issued forthwith. That thereupon the plaintiff's attorney, by whom the complaint, affidavit, and undertaking had been filed, and a summons and attachment demanded, left Madden's office, and was absent forty-five minutes. That on his return the writs which he had demanded had been completed, and were immediately thereafter, and without delaying him, placed in his hands. That in the meantime, and while the Clerk was engaged in preparing the plaintiff's writs, the attorney of Eggers & Co. came into the office and placed in his hands a complaint, affidavit, and undertaking in an action by Eggers & Co. against Lady Adams Company, and also demanded a summons and attachment forthwith. That he (the attorney of Eggers & Co.) was directed to fill out the blanks, and did so. That thereupon the Clerk signed, sealed, and delivered the same at three minutes before two o'clock, and at two o'clock the same were placed by the attorney of Eggers & Co. in the hands of the Sheriff; so that the attachment of Eggers & Co. was issued and placed in the hands of the Sheriff twenty-five minutes before the plaintiff's attorney returned to the Clerk's office.

While a Clerk is bound to issue writs in the order in which they are demanded, yet, if the party who makes the prior demand is not in attendance to receive his writs as soon as they are ready for delivery, he is not bound to delay the issuing of other writs against the same party which may have been demanded in the meantime. On the contrary, such delay would not admit of legal justification. Having prepared for delivery the writs first demanded, he is bound, notwithstanding the absence of the party by whom they have

been demanded, to proceed with reasonable diligence to comply with the demand of the next comer; and if the writs of the latter are ready before the former calls for his, he is nevertheless bound to deliver them as soon as they have been prepared. If in such a case the first comer loses his priority, such loss is due, as the case may be, to his own negligence or misfortune.

If, however, as is found in this case, the Clerk first issues the writ secondly demanded, he is, doubtless, in any event, guilty of a technical breach of his official duty, but if, notwithstanding such breach, he has the writ first demanded prepared and ready for delivery when it is called for, we are unable to perceive how the party by whom it was demanded has been injured by the breach. The fact that sufficient time has elapsed to enable the Clerk to prepare both writs and deliver the second before the first is called for, shows that had he strictly followed the line of his duty, and prepared the writs in the order in which they were demanded, the delivery of the second writ would have been likewise consummated before the first was called for. Such being the case, we think it clear, upon the findings, that the loss to the plaintiff of the first lien upon the goods of Lady Adams Company was not due to the omission of the Clerk in not completing his writ before issuing that of Eggers & Co. Had, however, the plaintiff's attorney returned before sufficient time had elapsed to enable the Clerk to issue and deliver both writs, the contrary result would have followed; and it is claimed on the part of the appellant that such was the fact, and that the finding of the Court in that respect is contrary to the evidence.

There were four witnesses who testified upon this point— the attorney of the plaintiff, Woods his Clerk, and Coffee and Barrett, both deputies of the defendant Madden, the former being the person by whom the writs in question were both issued. Under the well settled and uniform rule of this Court, we can look into their testimony only for the purpose of determining whether there is a substantial conflict. If

there is, we cannot disturb the finding of the Court below, notwithstanding we may be of the opinion that there is a preponderance against the finding; for, unlike the Court below when trying a cause without a jury, we possess none of the functions of a jury, and therefore are not allowed to substitute our opinion in the place of his, and declare to which side the testimony inclines.

The attorney of the plaintiff testified that "Coffee was just completing his attachment when he returned to the Clerk's office;" that "not more than two minutes elapsed between his return to the Clerk's office and the deposit by him of his attachment in the hands of the Sheriff," whose office, as the case shows, was in another room in the same building, but whether near the Clerk's office or remote from it does not appear.

Woods testified "that he was in the Clerk's office when the attorney of Eggers & Co. came in; that the latter said something to Coffee which he (Woods) did not hear, and after waiting a few seconds, went out; that shortly after the attorney of the plaintiff came in and asked if the papers in the Lick case were ready, and was told by Coffee that they were not, but would be in a minute or two; that the attorney of Eggers & Co. then came in, and the attorney of the plaintiff remarked to him, 'I am ahead of you this time,' to which the attorney of Eggers & Co. replied with a smile, 'I have the first levy;' that the attorney of the plaintiff then took his papers and went to the Sheriff's office, and soon returned greatly excited."

Coffee testified, in substance, "that while he was engaged upon the plaintiff's papers the attorney of Eggers & Co. came to him with his papers already prepared and requested him to sign and seal them, and that he did so; that the attorney of Eggers & Co. then left the office with the papers. That the attorney of the plaintiff was absent about an hour, time enough to make out the papers in both cases; that the papers in the plaintiff's case were made out when his attorney

returned, and had been ready for him probably three quarters of an hour before he returned."

Barrett, who had come into the office after the departure of the attorney of Eggers & Co., and before the return of the plaintiff's attorney, testified "that the plaintiff's papers were not made out when his attorney returned; that he (Barrett) signed the summons;" but he does not state whether he signed the summons before or after the return of the plaintiff's attorney. The testimony of Barrett, as to the signing of the summons, was corroborated by the summons itself, which was produced.

Here is a direct and substantial conflict upon the precise point whether the attorney of the plaintiff was absent long enough to enable the Clerk to make out and deliver both sets of papers. It may be, as claimed by the learned counsel for the appellant, that the finding of the Court is contrary to the weight of this testimony, but it cannot be denied but that there was some evidence which sustains the finding. Of the credibility and weight of this evidence, the Court below, acting as a jury, was the sole judge. To set aside his finding because we might have found the other way had we occupied his place, would be to substitute our judgment for his upon a question of fact, which, as this Court has uniformly held, we are not allowed to do.

Taking, then, the finding of the Court, so far as our action is concerned, as a true statement of the facts, we think the act complained of worked no legal damage to the plaintiff, assuming that he sustained a loss by his failure to obtain the first levy. That public officers should be held to a faithful performance of their official duties, and made to answer in damages to all persons who may have been injured through their malfeasance, omission, or neglect, to which the persons injured have in no respect contributed, cannot be denied. But it is equally true that if the result complained of would have followed notwithstanding their misconduct, or if the injured party himself contributed to the result in any degree by his own fault or neglect, they cannot be held responsible.

If the position of the injured party would have been just the same had not the alleged misconduct occurred, he has no legal ground of complaint; and if his own conduct or the conduct of his attorney contributed to the result, he is in *pari delicto*, and the law leaves him where it finds him.

The following cases will be found to bear more or less directly upon the question considered in this opinion: 12 Penn. State, 227; 12 Ill. 14; 20 Ohio, 327; 14 Ala. 172; 17 Ala. 176; 15 How. 179; 7 S. & M. 641; 9 Johns. 381; 10 Pet. 80; 13 S. & M. 392; 16 Iowa, 20.

Under the foregoing view the remaining questions become immaterial.

Judgment and order affirmed.

Mr. Justice SPRAGUE dissenting:

I dissent.