# Weicht, Appellant, v. Automobile Banking Corporation.

Argued November 20, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*A. J. White Hutton,* for appellant.

*John McD. Sharpe,* for appellee.

OPINION BY DITHRICH, J., January 18, 1946:

This appeal is brought by the plaintiff who commenced an action in assumpsit by causing a writ of foreign attachment to be issued. The writ was dissolved by the court below because the property sought to be attached was in the hands of the sheriff under a writ of *de retorno habendo.*

The defendant and appellee, a Delaware corporation, hereinafter called the corporation, instituted an action of replevin against the plaintiff to recover the possession of an automobile. Plaintiff filed his bond in the sum of $2000 and retained possession. The corporation was granted a rule for judgment for want of a sufficient affidavit of defense, and after argument the rule was made absolute and judgment entered for the corporation. In execution of the judgment, the corporation issued a writ of *de retorno habendo.* On April 19, 1945, at 8:30 A.M., the sheriff served the writ and took possession of the automobile. Two hours later, at 10:30 A.M. the writ of foreign attachment was issued at plaintiff's instance and received by the sheriff. The automobile was still in the sheriff's custody, not having been returned to the corporation. The sheriff's return to the writ of foreign attachment answered that the automobile was in the sheriff's custody by virtue of the writ of *de retorno habendo.* On the corporation's motion, the learned court below dissolved the writ of foreign attachment, holding that the property was in the custody of the law and therefore not liable to attachment.

It is well settled and recognized by the weight of authority that property in the custody of the law is not subject to attachment. 10 Standard Pa. Practice, Attachment, §56, p. 255; 7 C.J.S. Attachment §88, p. 258; 4 Am. Jur., Attachment and Garnishment, §387, p. 797. The rule was very early established in Pennsylvania in *Ross v. Clarke,* 1 Dallas 354, where it was held that money paid into the hands of the prothonotary was ". . . to be considered in the same state as if it had been paid into the hands of the sheriff . . ." and was

not the subject of a foreign attachment. See also *Riley v. Hirst,* 2 Pa. 346, and *Bulkley v. Eckert,* 3 Pa. 368. Appellant, however, contends that the general rule is not applicable to the instant case. It is his theory that after the final judgment of the court distributing the property to the corporation, the property was constructively in the hands of the corporation and the sheriff held it as the corporation's agent. We do not agree with this contention.

"The sheriff is an officer of the court, charged with the duty of executing the process of the court. . . . He is no more the *agent* of the city or school district than he is of the *execution creditor* . . .:" (Italics supplied.) *Braun, Sheriff, to use of Louik, v. De Rosa,* 128 Pa. Superior Ct. 318, 327, 194 A. 514, 518. Property in the hands of the sheriff on an execution writ remains *in custodia legis* until the final step is taken and the property is delivered to the judgment creditor. As long as the property is *in custodia legis,* it cannot be attached. The rationale of this decision is supported by the reason for the general rule which is clearly set forth in *Bulkley v. Eckert,* supra. "His situation [treasurer of a school district] does not appear to us to be distinguished from that of a sheriff or prothonotary, who has money in his hands as a public officer; and it has been determined that these are not liable to the process of attachment. Great public inconvenience would ensue, if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment, and trouble that would ensue, from being stopped in the routine of their business, compelled to appear in court, employ counsel, and answer interrogatories, as well as take care that the proceedings are regularly carried on, and bail to return duly given: If a precedent of this kind were set, there seems no reason why the state or county treasurers, or other fiscal officers of the Commonwealth, or of municipal bodies, may not be subject to the levying of attachments, which has never been attempted nor supposed to come within the attachment law."

The decree is affirmed.

DISSENTING OPINION BY RENO, J.:

Final judgment in replevin had been rendered, no appeal had been taken, and the writ of de retorno habendo had been executed by the sheriff who held the automobile subject to appellee's demand. The writ had become virtually functus officio, and the law was relaxing its custodial grasp upon appellee's property. Yet, disregarding what I think are the realities of the case, the Court holds that the automobile was still in custodia legis. The end-result is that a Pennsylvania litigant is compelled to pursue appellee to the Delaware courts unless, perchance, appellee is registered in this Commonwealth, and this is improbable. Appellant's right to another writ is illusory for, under this decision, he must time his action with such precision that the writ is lodged with the sheriff in the momentary interval between the sheriff's manual delivery and the swift departure of appellee's agent with the automobile to parts unknown.

"In custodia legis" is an obscure label which medieval judges formulated without accurately describing the content, the boundaries, or the contours of the dogma which it covers. Still, no court has declared that in this factual situation property is in custodia legis, or, to recall another alluring metaphor, "in gremio legis". Not even the text writers whom the majority calls to its assistance completely sustain its view. Take 7 C. J. S., Attachment, §88, as an instance. That section vindicates my view as well as that of the majority. A portion of it is quoted: "As a general rule, property that is in custodia legis is not subject to attachment *prior to fulfillment of the purpose for which it is held.* In the absence of statutes providing therefor, as a general rule, property that is in custodia legis is not subject to attachment without leave of court; *but after the fulfillment of the specific purpose for which the fund or property is held,* the writ may be enforced against it, or any surplus remaining, unless the court otherwise directs."

(Italics supplied.) 4 Am. Jur., Attachments and Garnishment, §387, does indeed stand for the proposition which the Court has adopted, but a few pages farther on (§395) I read: *"Property is attachable or garnishable in the possession of a sheriff or other officer after it has been discharged from a previous attachment, garnishment, or execution."* (Italics supplied.)

Property in the possession of a Pennsylvania sheriff is not sacrosanct in all circumstances. Were it so, there would be no place in our law for the rules of successive levies which are treated in 10 Standard Pa. Practice, Attachment, §57, the section immediately following that cited by the majority. See also 7 Standard Pa. Practice, Enforcement, §§95, 160. If there are distinctions between writs of execution and writs of foreign attachment, so that under one you can touch and hold and even sell property in the custody of the sheriff and under the other you cannot as much as touch it, the differences are too shadowy and subtle for me to perceive them. Nor has any case come to my notice which has demonstrated logical reasons for the discrimination.

The cases upon which the majority relies come nowhere near meeting the facts of the instant case. *Ross v. Clarke,* 1 Dallas 354, was decided in 1788, the facts are only sketchily reported, and it does not appear that the court had ordered the prothonotary to pay the money in his custody to Clarke. Without that indispensable additional factor, *Ross v. Clarke* is not analogous to the case at bar, and does not control it. *Riley v. Hirst,* 2 Pa. 346, merely holds that an attorney-at-law is not a public official. In *Bulkley v. Eckert,* 3 Pa. 368, 369, the money sought by an attachment-execution was held by a school district treasurer, as stated by the court, "in common with other money"; no part had been set aside, segregated, or marked to the use of the execution-defendant; and the treasurer was not in possession of a chattel legally adjudicated the property of the execution-defendant. Moreover, the decision might have been more

properly rested upon the Act of April 15, 1845, P. L. 459, §5, 42 PS §886, prohibiting the attachment of "the salary of any person in public or private employment".

Although the quotation from *Braun v. DeRosa,* 128 Pa. Superior Ct. 318, 327, 194 A. 514, 518, is obiter dicta, I do not question the principle. The sheriff is not appellee's *agent,* but he certainly is appellee's *bailee.* No principle is more firmly imbedded in our law than that goods seized by a sheriff pursuant to a writ of execution are held by him as the bailee of the execution-plaintiff. *Hartleib v. McLane's Administrators,* 44 Pa. 510; *Com. v. Weglein,* 147 Pa. Superior Ct. 257, 24 A. 2d 633; *Crawford v. McMahon,* 69 Pa. Superior Ct. 19; *Reece v. Rodgers,* 40 Pa. Superior Ct. 171. Agent or bailee, the difference is inconsequential in this case; the *fact* is that the sheriff has possession of the automobile by virtue of a writ of execution; the *law* is that he holds it for appellee. And, since the sheriff holds only bare possession for appellee without the right to use the property, or to do anything in relation to it, except to deliver it to appellee, the sheriff's tenure as a bailee is custodial only, and therefore so insubstantial that one can readily and plausibly argue, and the appellant is not without logical and authoritative support in asserting, that appellee had constructive possession of the automobile. See 42 Am. Jur., Property, §42, 6 Id., Bailments, §91. However, it is not necessary to rely wholly upon that principle.

I am arguing that the rule enfolded in the expression, "in custodia legis", does not require us to affirm the dissolution of the instant attachment. To make my point, I am not obliged to question the rule itself; yet I cannot refrain from saying that if the rationale which the majority has discovered in *Bulkley v. Eckert,* supra, is the only predicate for the rule, it has little, if any, rational basis in these days. Mr. Justice SERGEANT was writing in the more spacious days of a hundred years ago, and I can understand that then it may have

been reasonable to immunize a school district treasurer, who was probably enjoying an honor without an honorarium, against attachments. Whatever the sonorous phrases like "great public inconvenience", "being stopped in the routine of their business", "delay, embarrassment, and trouble", may have meant to judges of another day, they leave me cold and unresponsive. If the rule is to be sustained upon reason, sounder reasons must be found to support it. To my way of thinking, the rationale upon which the majority relies for its conclusion most certainly does not apply to sheriffs in this day and generation. A hundred years ago sheriffs were paid in fees, and to call them from their farms, stores or taverns to give attention to business from which they derived no additional remuneration may have imposed a slight inconvenience. Now they are paid salaries, and many of them are supplied with counsel, paid by the county, who "appear in court", for them and on their behalf can "answer interrogatories", "take care that the proceedings are regularly carried on and bail to return duly given." True, the sheriff of Franklin County is not entitled to a solicitor, and, perhaps, counsel fees are not an expense incurred in the performance of his duties for which he is entitled to reimbursement by the county. See Act of March 24, 1927, P. L. 68, No. 46, §1, 16 PS §2461. But the pother about retaining counsel which appealed to the sympathies of judges a century ago has been effectually allayed by statutes since enacted which provide ample counsel fees for sheriffs summoned as garnishees in foreign attachment. See Acts of April 22, 1863, P. L. 527, §1, 12 PS §2999; June 11, 1885, P. L., 107, §1, Id. §3000; April 29, 1891, P. L. 35, §1, Id. §3001. At least *that* reason for the rule has evaporated. If other substantial reasons support its social value in modern jurisprudence, they have not been disclosed to me.

Granting that inconvenience, delay, embarrassment, and trouble should be weighed in forming judgment,

how about the inconvenience and trouble imposed upon this appellant who is turned out of our courts, and compelled to seek a remedy in another jurisdiction? For my part, balancing the onerous inconvenience and vexatious trouble appellant must endure against the trifling and slight duties which would be cast upon the sheriff, I cannot, uncritically following an ancient legal fiction, deny him access to the courts of his own state.

I would reverse the judgment and reinstate the writ of foreign attachment.

Judge ARNOLD has authorized me to state that he joins in this dissent.