Bridges
v.
Perry.

---

## WALES A. BRIDGES *v.* GATES PERRY, Jr.

Officers, attaching property on mesne process, are not liable for the property, if it is taken from them without any want of ordinary care on their part.

Officers, under such circumstances, are only liable for the same degree of diligence in keeping the property as other bailees for pay.

CASE against the defendant, as sheriff of Windham county, for the neglect of his deputy, in not safely keeping and returning, to be sold on execution, seven cows, attached on a suit in plaintiff's favor against one Dexter.

Plea, general issue, and trial by jury.

On the trial in the county court, the plaintiff introduced testimony tending to prove the allegations in his declaration.

The defendant offered testimony to show that when the defendant's deputy attached the cows, he delivered them, for safe keeping, to one Underwood, the plaintiff's agent, who ordered the attachment made, being present and making no objection ; that Underwood put the cows into a pasture with a good and sufficient fence, and, in a few days afterwards, Dexter, the owner of the cows, without the knowledge or consent of defendant, his deputy, or Underwood, took down the fence of said pasture, drove the cows out, and put them into his own pasture, and gave such notice that other creditors of said Dexter attached and held said cows.

To the admission of this testimony the plaintiff objected, and it was rejected by the court.

The jury returned a verdict for the plaintiff, and the defendant excepted.

Windham,
*February,*
1842.

Bridges
*v.*
Perry.

*A. Keyes* and *R. Tyler* for defendant.

The county court erred in rejecting the testimony offered in defence.

I. The plaintiff consented to the bailment, and took the risk upon himself.

II. If not so, and the sheriff would be liable at all events on *final process,* except for the act of God and the public enemy, yet a different rule prevails in *mesne process.* In such case the sheriff is holden only to exercise *ordinary care and diligence. May* v. *Proby,* Cro. Jac. 419. S. C. Bulstr. 198. Hammond's Nisi Prius, 348. *Long* v. *Billings,* 9 Mass. R. 487. *Nye* v. *Smith,* 11 Mass. R. 188. *Shackford* v. *Goodwin,* 13 Mass. R. 187. —— v. *Whitmore,* 3 Stark. N. P. C. 168. 5 Taunt. R. 225.

III. That the sheriff, in *mesne process,* is bailee for debtor and creditor, and holden to exercise only *ordinary care and diligence,* has been directly decided in New York and New Hampshire. *Jenner* v. *Joliff,* 9 Johns. R. 381. S. C. 6 Johns. R. 9. *Cilley* v. *Jenness,* 2 N. H. R. 87. *Runlett* v. *Bell,* 5 N. H. R. 433. Story's Bailments, 96.

IV. The cases in Massachusetts of *Phelps* v. *Bridge, Tyler* v. *Ulmer,* and *Congdon* v. *Cooper,* are cases of *gross neglect,* and do not apply ; for the present is not a case of failure of receiptors, where the property was left in the hands of the debtor ; but where the property was in the keeping of the sheriff, in the *ordinary way,* and tortiously taken by the debtor, without fault in the sheriff.

*D. Kellogg,* for plaintiff.

I. The defendant's deputy, by his return on the writ, bound himself to levy the plaintiff's execution upon the property attached, or respond to the plaintiff for the value of the property so attached. He was, at all events, responsible for the safe keeping of the property. *Phillips et al.* v. *Bridge,* 11 Mass. 247. *Tyler* v. *Ulmer,* 12 Mass. 163. *Congdon* v. *Cooper,* 15 Mass. 10.

II. If we are correct in the foregoing position, it necessarily follows that the testimony offered by the defendant fur-

nished no defence to the suit, and consequently was proper-
ly excluded.

The opinion of the court was delivered by

· REDFIELD, J. — In the trial of this case, the court below,
having rejected the evidence offered by the defendant, to
show that he was guilty of no negligence in keeping the
property, without submitting it to the consideration of the
jury, who were the proper judges of that question, did decide
the case on the broad ground, that, even if that were shown,
it would amount to no defence. This, then, is the only ques-
tion to be here revised.  This property was attached upon
*mesne* process.  We will examine the cases urged upon our
consideration, and see how far they go to determine the ex-
tent of the liability of sheriffs for keeping property so situa-
ted, and how far they are so consistent with principles as to
be worthy of reliance.

The case of *Jenner* v. *Joliff*, 6 Johns. 9, is that of an ac-
tion of trover against the creditor, who *seized* property by
virtue of process in his favor against the plaintiff, issuing out
of the king's bench in the Province of Lower Canada.  This
attachment (or seizure, as they call it,) being made by a
proper officer there, and the loss complained of happening
without the fault of the officer, but through stress of weather,
it was held this action will not lie against the creditor.  The
same case comes up again, 9 Johns. 381, in the form of tres-
pass on the case.  Here it was claimed the bailiff, having
custody of the property, was guilty of negligence in keeping
it, and this through the advice of the defendant, the creditor,
whereby great loss accrued.  The court held that if this
were made out in proof, both the creditor and officer were
liable.  This was making the officer liable for the want of
ordinary care and diligence, and this degree of liability no
one doubts, whatever might be thought of the propriety of
trying a case of that kind, which occurred at Quebec, and
where the duty of the sheriff is enforced, by rule of court, by
the law of some other forum.

The case of *Cilley* v. *Jenness*, 2 N. H. R. 87, turns
mainly upon the question of the liability of perishable prop-
erty to attachment, and the extent of the liability of the

sheriff for the keeping of such property. It really renders us no aid in regard to the present case.

The case of *Phillips* v. *Bridges*, 11 Mass. R. 242, decides that where the sheriff bails the property attached to a receipt-man, he is liable for the acts of such servant, and of all to whom *he* entrusts the property. This is a very salutary and reasonable rule, and one which it is not easy to gainsay, or contradict. What the judge, in delivering the opinion of the court, says in regard to the general duties and liabilities of sheriffs, it is not necessary here to repeat. The case of *Tyler* v. *Ulmer*, 12 Mass. R. 163, turned upon the same point. *Congdon* v. *Cooper*, 15 Mass. R. 10, decides that, in that case, the facts did not show that the town of Eastport, being in the hands of the public enemy, had any tendency to impede the sheriff in the performance of his duty. The case of *Runlet* v. *Bell*, 5 N. H. R. 433, in effect, decides that if the sheriff attach goods on *mesne* process, and bail them to some person, who is at the time responsible, and who executes his receipt for them, this will exonerate the sheriff. That is treating this voluntary bailment the same as a compulsory one, by writ of replevin. But we think the cases are widely different. In the case of a voluntary bailment by the sheriff, he must be considered as responsible for the acts of the bailee, as his servant, to the full extent. Thus stand the decided cases which have been presented to the court. And it is needless to say they do not afford much aid in determining the question before us. We are left to decide it much as we judge the general principles of the law of bailment, and the kindred analogies, require.

So far as the general principles of the law of bailment are concerned, there is not, at the present day, perhaps, any very striking reason to be urged why sheriffs should be laid under any higher degree of obligation, in regard to keeping property, than other bailees for pay, i. e. ordinary care and diligence. But early in the history of the common law it was decided that, in regard to property taken on final process, (and in England it is taken on no other ordinary process,) the officer making the levy should be liable for its safe keeping and forth coming, in all cases, unless hindered by public force, or inevitable accident, and that he could not excuse himself by showing a rescue even. *Mildmay* v. *Smith*, 2 Saun-

ders' R. 343, n. 3.  *Clerk* v. *Withers,* 2 Lord Raymond, 1075. The same rule of liability obtains in regard to the body, when once in custody upon execution. 12 Mod. 10. *O'Neil* v. *Marson,* 5 Burrow, 2813. 2 Saund. R. 244, a, note. But when the body is arrested on *mesne* process the sheriff may return a rescue. Cases cited above, and note to 2 Saund. R. 345. The reason assigned in the books is, that, in the case of arrest and custody, on final process, the officer usually has more time for preparation, and may, if he will, have the aid of the *posse* of the county; but in the case of *mesne* process, he must arrest when the debtor is pointed out to him, and may be often required to do it suddenly, and cannot always be supposed to have the *posse* at his command, at a moment's warning. To my mind, the attempt at making a distinction in the cases shows more reason for dispensing altogether with any such rigorous requirement, in either case, than it does for so wide a distinction between the two cases; but such is the law, and so are the reasons upon which its sages have seen fit to erect distinctions.

The only question now is whether we shall adopt the analogy of this distinction in regard to property. The court are disposed to do it for two reasons. 1. If we hold the sheriff and other officers liable, in the case of property attached on *mesne* process, only for ordinary care and diligence, such as other bailees for pay are required to exercise, we place the liability upon a reasonable basis, whereas the rigorous accountability imposed upon certain classes of bailees, on account of some supposed facility or temptation, which they have been said to possess, for collusive rescues or robberies, is not founded upon any just warrant, either of sound judgment or constant experience. I refer to the cases of common carriers, and sheriffs, in regard to property taken on final process.

2. We think there is far more reason for the distinction which we here make, in regard to the liability of sheriffs for the keeping of goods on *mesne* and final process, in analogy to their different liability for keeping the body when arrested on those different processes, than there is for the distinction made in this latter case. For when property is taken on final process, it is to be kept but a short time, at longest, so that it may be closely watched, and kept with this severe

diligence, for a few days, without materially interfering with the other duties of the sheriff.   But in the attachment of property on *mesne* process, in mere matters of collection, there will ordinarily be a delay of from six to eighteen months, and in matters of controversy this delay will be extended to many years ; and to require the sheriffs to keep all property, by them attached on *mesne* process, at all hazards, except inevitable accident, or public force, would, of course, justify an expense in proportion to the degree of responsibility required, and would thus, in many cases, defeat the object of the attachment, by consuming the property in needless expense.   I know that the rule of the English law in regard to property taken by distress, (which bears the closest analogy, of any thing found there, to our attachment on *mesne* process,) is, that it is to be sustained by the debtor, and, unless he will do it, it is said the officer may suffer it to perish, without incurring any liability.   But such a rule could not be made tolerable here.   Hence the sheriff is held responsible for the safe keeping of the property to the extent of other bailees.  If he return the attachment, he is, *prima facie*, liable to produce the property upon the execution, but, as we think, may excuse himself by showing that it is not in his power, and that he has been guilty of no fault.   And even this degree of responsibility sometimes operates very severely. In the case of *Sewall* v. *Mattoon,* 9 Mass. R. 530, the attachment was made 16th December, 1806, of two oxen and two cows, and the execution issued on the 18th of February, 1811, more than four years subsequently, and when the expense of keeping would have more than twice exhausted the property ; but as it did not appear that any such expense had been incurred, or that the officer had taken the cattle into custody, and if he had the debtor might have sustained them, as was his duty, the officer was made liable for the value of the property when attached and interest.   And the case of *Tyler* v. *Ulmer* is somewhat similar.   We think, then, there is very good reason why the officer attaching property on *mesne* process should only be liable to the same extent as other bailees for hire.

Judgment reversed and new trial granted.