## KENDALL *v.* MORSE.

A sheriff who has attached personal property is not liable for loss or injury which is not caused by his negligence or want of ordinary care.

When the question is whether the goods were deposited by him in a suitable place, proof that certain insurance companies were accustomed to treat as extra hazardous buildings like that where these goods were placed, is not admissible.

THIS was an action on the case against a deputy of the sheriff, for negligently and improperly keeping certain chattels attached by him on mesne process, whereby they were accidentally burned and injured. By agreement of the parties the case was tried before an auditor, who reported the following facts:

The property injured consisted of the household goods of the plaintiff, and at the time of attachment of the same by the defendant, on a writ sued out by one William Rand against the plaintiff, was situated in the house occupied by the plaintiff in Portsmouth. For some three or four days after the attachment the property remained in charge of a keeper. At the expiration of that time the defendant removed the property from the dwelling-house, and stored a portion of it in an unoccupied room in a grist-mill of the said Rand. The remainder of the property was restored to Mrs. Kendall upon a receipt. Before the defendant so stored any portion of the property, he spent some considerable time in an attempt to find some place to put it in; but finding none convenient or proper for the purpose in the vicinity, Mr. Rand consented that he might store it in the room in his mill, without charge, and the defendant accepted the offer.

While the property was so stored, the opposite portion of the mill from that containing the attached property was fired by an incendiary, and the goods injured by the smoke, water and flames to the amount of $62.59.

The mill was some forty or fifty rods from the house where the property was situated at the time of the attachment. There was under the same roof a planing-mill and a grist-mill, the former owned by a stranger to the suit, the latter by Mr. Rand. The goods were stored in a chamber in the second story of Mr. Rand's grist-mill, being the eastern portion of the mill. The western portion of the mill contained the planing-machine, and was occupied as a sash and blind manufactory. The fire originated in the basement story of the western part of the mill, and it was destroyed; the eastern end was not burned, but it was injured to some extent. The upper story of the mill was divided into three apartments, and the property attached was placed in the one most remote from that part of the mill where the fire originated. Under this apartment was the counting-room of Mr. Rand. In that part of the mill occupied as a sash and blind manufactory there was always some considerable quantity of shavings made by the planing-machine. The mill was surrounded on three sides by water, and it had stood in its present place 92 years. No fire had occurred there before, though some weeks previous to the fire there had been an attempt to fire said mill, of which Mr. Rand had notice. It was the custom to run the grist-mill by night as well as by day.

The plaintiff was permitted by the auditor, subject to the exception of the defendant, to prove that John Sise (a witness produced) was an agent for various fire-insurance offices, and had been such some fourteen years, and had taken risks on mills; that the ordinary charge for insurance against fire on a dwelling-house was one half of one per cent; on grist-mills of wooden structure, from one to two per cent, with an increase of rates when operated by night; on grist-mills with planing-machines, from three to five per cent, according to their operation by night, and the external exposure of the buildings; that this last grade of risks were denominated "extra hazardous," by insurance agents to companies; that there is always an increase of rates where wood shavings are made, and that the repairing of a house is considered by insurance companies to avoid a policy. Sise testified that he had taken risks on property under attachment by an officer. These facts the auditor reports to the court to be considered or rejected, as it shall appear that evidence of them was properly admitted, or otherwise.

It was also proved that the defendant took no receipt for the property from Mr. Rand, nor did he take the key of the room; that Rand owned and occupied the mill; also, that the plaintiff knew, at or near the time of the removal of the goods from her house, that they were stored in the mill, and she said nothing in regard to it.

The agreement of the parties authorized the auditor to decide the case, or report the facts to the court, as he should judge proper. Upon this report each party moved for judgment in his own favor.

*Hackett*, for the plaintiff, cited Story on Bail., secs. 507, 511, 518; 1 Bosworth (N. Y.) 357; 15 N. H. 29; 15 U. S. Dig. 497; 2 Vt. 28.

*Hatch*, for the defendant, cited Comp. Stat., ch. 189, secs. 9, 10 ; and ch. 245, sec. 14 ; Story on Bail., sec. 133 ; Ang. on Ins., sec. 72 ; *Franklin Ins. Co.* v. *Findlay*, 6 Whart. 483 ; *Lovell* v. *Sabine*, 15 N. H. 36 ; *Browning* v. *Hanford*, 5 Hill 288 ; *Jenner* v. *Joliffe*, 6 Johns. 9 ; *Runlett* v. *Bell*, 5 N. H. 433 ; *Jenness* v. *Cilley*, 2 N. H. 91 ; *Burke* v. *Trevitt*, 1 Mason 96 ; *Howard* v. *Whittemore*, 9 N. H. 133 ; *Cross* v. *Brown*, 41 N. H. 283 ; 1 Phillips Ins. 573 ; *Stebbins* v. *Globe Ins. Co.*, 2 Hall 632 ; *Jolly* v. *Baltimore Eq. Ins. Co.*, 1 Har. & Gill 294 ; *Moore* v. *Westervelt*, 2 Duer 59.

BELLOWS, J.   The first question in this case is, whether the sheriff is liable for the goods attached, notwithstanding they were accidentally destroyed by fire.   Upon this point we are of the opinion that, like an ordinary bailee for hire, he is liable for damages to the goods that happen for want of ordinary care, but is not to be treated as an insurer.   In *Runlett* v. *Bell*, 5 N. H. 433, the question was considered, and it was held that for the loss of the goods, without his fault or neglect, the sheriff was not liable.   In that case he had delivered the goods attached to a third person, who was apparently in good circumstances, for safe-keeping, taking his receipt for the same ; but they were eventually lost through the receiptor's insolvency, and it was decided that the sheriff was not liable.   This was, perhaps, a necessary deduction from the decision in *Barrett* v. *White*, 3 N. H. 210, where the sheriff was held liable for damages to hay, caused by its removal without giving the debtor an opportunity to procure some person to be responsible for it.   The doctrine of *Runlett* v. *Bell* is recognized in *Howard* v. *Whittemore*, 9 N. H. 133 ; *Barron* v. *Cobleigh*, 11 N. H. 567.

The doctrine that the sheriff is not liable as an insurer, but only for want of ordinary care, is fully recognized in New-York ; *Jenner* v. *Joliffe*, 6 Johns. 9, and same case, 9 Johns. 381 ; *Browning* v. *Harford*, 5 Hill 588, where the question is much considered ; and *Cowen*, J., regards the possession of a sheriff as analogous to that of an ordinary bailee of goods for the purpose of custody and sale ; like a factor under a *del credere* commission.

The same doctrine is held by the Vermont courts, *Bridge* v. *Perry*, 14 Vt. 262, where it was held that officers attaching goods on mesne process are liable only for the same degree of diligence in keeping the property as other bailees for pay.   So in *Briggs* v. *Taylor*, 28 Vt. 180, it is decided that the diligence of the sheriff, like other bailees for hire, must be that which prudent men exercise in the conduct of their own affairs ; and it is said that there is no substantial distinction between negligence and gross negligence.   A similar doctrine, also, is laid down in Story on Bail., secs. 130, 162, where the sheriff is regarded as a bailee for a compensation.

In opposition to this doctrine we find no adjudged case, and we have been referred to none but the case of *Moore* v. *Westervelt*, 1 Bosworth (N. Y.) 357 ; 19 U. S. Dig. 622, secs. 20, 22, where it seems to have been held, that if the officer leave the goods with the defendant in replevin, he will be liable as an insurer ; though if he takes them into his own custody he will be bound to use only

ordinary care and diligence—that care which a prudent man takes of his own property.

This brings us to the question whether the sheriff has used ordinary care and diligence in keeping the goods; and this is a question of fact which the auditor has not found. It will be necessary, therefore, that the report be recommitted for that purpose. The testimony of John Sise could hardly be regarded as relevant. In substance, he undertakes to state the rates of premium for the insurance of different classes of buildings, established by the insurance companies with which he had been connected, and denominating buildings, like the one in which were stored the goods in question, as extra hazardous; and stating, also, that there was a large increase of rates where wood shavings are made. This is simply stating how buildings like the one in question were regarded by those insurance companies, for the purpose of showing that it was not a safe place of deposit; and we are inclined to think it was incompetent. Whether it was a proper place of deposit or not, was a material inquiry, it is true, but we know no principle that would make the rules or practices of those insurance companies admissible in evidence on that question. It is, in fact, in its nature mere hearsay. *Webber* v. *Eastern Railroad*, 2 Met. 149; *Goodall* v. *New-England Ins. Co.*, 25 N. H. 191, where it was held that the practice of the insurance company was not admissible in evidence. In *Hubbard* v. *Concord*, 35 N. H. 60, it was decided that it was not competent to show that sidewalks in Boston and other cities were in similar condition to the one in question, either to prove that the latter was in proper condition, or that the plaintiff did not use due care in passing. There are, doubtless, cases where the usages of particular trades or business are allowed to be proved, but these are cases where the matters at issue relate to such trades or business, and the acts or contracts in question should properly be interpreted in the light of such usages. In this case the evidence offered has nothing to do with any usage touching the acts in question, but is merely a statement of the rules by which certain insurance companies determine the rates of premium, and it may be liable to the still further objection that it does not appear to be represented as the prevailing usage in that business. However, independent of this objection, we think the evidence inadmissible.

The case should, therefore, be discharged, and the

*Report recommitted.*