[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 516 
It is true, as claimed by the plaintiff's counsel, that no express statutory provision was necessary to enable supervisors to sue upon bonds directed to be given to them by the collectors of towns, because, as was said by BRONSON, J., in Supervisor ofGalway v. Stimson (4 Hill, 136), as a general rule, "all public officers, though not expressly authorized by statute, have a capacity to sue commensurate with their public trusts and duties." It does not, however, follow from this, that the provisions of our statute in relation to the prosecution of such bonds are entirely without effect upon this right of the supervisor. It is, without doubt, a well-settled principle, that where a right of action exists at common law, and an indefinite remedy is given by statute, the remedy at common law is not taken away, unless such an intention is clearly manifested in the statute. In this case, the bond itself is the creature of the statute. Its form is prescribed and its effect controlled by the provisions of the statute. Independently of any statutory provisions on the subject, the obligors in such a bond would only be liable to pay the damages which might accrue in consequence of any default upon the part of the collector; and if it could be shown, therefore, that the tax, or any portion of it, was not collectible, the responsibility of the obligors would be protanto reduced. Under our statutes, however, any sum left unpaid by the collector, unless properly returned as uncollectible, is regarded as a specific debt for which the collector and his sureties are liable. (Muzzy v. Shattuck, 1 Denio, 233.)
This conclusion is the necessary result of the provisions of the statute concerning "the manner in which taxes are to be collected, and the duties of the collector." (1 R.S., 400, §§ 13, 14, 15, 16.) Section 13 provides, that if the collector shall *Page 517 
fail to pay the sums required by his warrant, or either of them, or to account for the same as unpaid, the county treasurer shall issue a warrant to the sheriff to collect such sum as shall remain unpaid, or unaccounted for, out of the property of the collector. Section 14 requires the sheriff to execute the warrant, and pay over the moneys collected to the county treasurer. Section 15 directs that the sheriff shall state in his return the sum collected upon the warrant, and if anything remains unpaid; that he shall also state that there is no property of the collector out of which the same could be levied. It then directs that the county treasurer shall forthwith give notice to the supervisor of the town of the amount remaining due from the collector. Then follows section 16, which provides as follows: "The supervisors shall forthwith cause the bond of such collector to be put in suit, and shall be entitled to recover thereon the sum due from such collector, with costs of suit."
Now, suppose the supervisor, as the plaintiff's counsel contends he might, should bring a suit upon the bond immediately after the collector's default, in not paying over the money without waiting for the issue and return of the warrant of the county treasurer. What would be the amount of recovery in such a case? Could the supervisor, in such an action, founded purely upon his common-law right, avail himself of the provision in section 16, entitling him to recover the "sum due" from the collector? What is the "sum due" there referred to? It is, of course, the sum appearing by the sheriff's return of the warrant to remain unpaid. Can an action be commenced to recover this sum, before the amount is ascertained, or before it is ascertained that any sum whatever will remain uncollected? I think, clearly not. In such an action as I have supposed, therefore, the recovery must be according to the rule of the common law, a conclusion which appears to me inadmissible. The same instrument can hardly bear two different constructions, and be subject to two different rules of damages for the same identical breach. It would seem, therefore, that no action could be maintained upon the bond *Page 518 
until after the issue and return of the warrant authorized by section 13. As, however, it is not requisite in the decision of the case, to dispose of this question, I do not assume to pass definitely upon it.
The next question, and that upon which the case mainly depends, is whether the issuing of the warrant by the county treasurer, within the twenty days mentioned in the act, and its return within the time prescribed, are conditions precedent to any right of recovery upon the bond; in other words, whether the power to issue the warrant at all is absolutely limited to the twenty days. If the statute is merely directory as to the time, then it would follow that the judgment appealed from is right, because section 16 authorizes the suit to be brought whenever the supervisor receives notice of the return of the warrant, and no time is limited for commencing such suit, after the notice is given.
The general rule on this subject is, as stated by MARCY, J., inThe People v. Allen (6 Wend., 486), that "where a statute specifies a time within which a public officer is to perform an official act, regarding the rights and duties of others, it will be considered as directory merely, unless the nature of the act to be performed, or the language used by the legislature, show that the designation of the time was intended as a limitation of the power of the officer."
Most of the instances in which this principle has been applied have been cases where the act directed to be done was required for the public benefit alone, and where no private interests were directly and necessarily involved. There is apparent force in the suggestion, that the sureties here have an interest in the prompt performance of his duty, by the county treasurer; that cases might well arise in which the whole debt would be collected from the property of the collector, and the sureties be thereby saved harmless, if the warrant was promptly issued.
There is nothing, however, in the terms of the act to indicate that it was intended absolutely to limit the power of issuing the warrant to the twenty days. The provision was *Page 519 
intended, at least in part, for the benefit of the public, and it has been held with great uniformity, that the public interests are not to suffer by the laches of any public officer. (UnitedStates v. Kirkpatrick, 9 Wheat., 720; Same v. Van Zandt,
11 id., 184; Same v. Nicholl, 12 id., 505; Dox v. P.M.General, 1 Pet., 325; People v. Russell, 4 Wend., 570.)
The case United States v. Van Zandt was very similar to this. The action was against the surety, upon the official bond of a paymaster in the army. By the "act for organizing the general staff, and making further provision for the army of the United States," it was, among other things, provided in the most imperative terms, that if a paymaster should fail to render his vouchers to the paymaster general for settlement of his accounts, for more than six months after his having received funds, he should be recalled and another appointed in his place." This provision had not been complied with. On the contrary, the paymaster had been furnished with additional funds, after he had made default, and was liable to be removed; and yet it was held that the surety was not discharged. I can see very little, if any, difference in principle between that case and the present. The argument was quite as strong there as here, that compliance with the provisions of the act might have operated to save the surety from much of his responsibility. The Court, however, adhered to the general rule that the public is not to suffer by the laches of its officers.
Besides, if we are to look out of the act itself for reasons, growing out of its operation, why it should be held to be imperative, we must look at the whole act and at all the interests which it involves. The town has an interest here, entirely distinct from that of the public at large, or the people of the county. This interest is as much to be regarded as that of the sureties. The county treasurer is in no respect the agent or representative of the town, and is not subject to its control. Section 13, above referred to, provides that no warrant shall be issued for the collection of any moneys payable to the officers of the town, "without proof, by the oath of such town *Page 520 
officers, of the refusal or neglect of the collector to pay the same, or account therefor." Now, suppose the collector to have made default in paying over the sums directed to be paid to the officers of the town, and that these officers have made the necessary oath to authorize the issuing of a warrant, and yet the county treasurer neglects to issue it within the twenty days. Upon the theory of the defendants here, the town is entirely remediless, and must lose the whole tax, if so much remains unpaid, although the town is in no respect in default, as it could not compel the treasurer to act. This consideration shows, I think, the propriety of adhering, in this case, to the well-settled rule on the subject. It follows, from these views, that the provision in section 13, as to the time of issuing the warrant, should be held to be merely directory, and that a strict compliance, in that respect, is not essential to the liability of the sureties upon the bond.
This question was before this court in the case of Post v.Wicks, decided in December, 1861, and was disposed of in accordance with the foregoing conclusion. My attention was not called to that case until since the above was written.
There is a further question, which was not presented in the case of Post v. Wicks, viz.: whether proof that the defendants have been actually damnified by the omission of the county treasurer to issue the warrant in time, would change the result. If it would, I think the defendants proved enough upon the trial to entitle them to the benefit of the rule. But the authorities and arguments already adduced are, I think, decisive of this question. Those authorities proceed upon the ground that the public interests will not be permitted to suffer in consequence of the laches of a public officer. There is no case which tends to support the position taken by the defendants, except The People v. Jansen (7 John., 332). This case does not appear to have been followed, and seems hardly reconcilable with some of the later cases to which I have referred. But, conceding it to have been correctly decided, the principle cannot, I think, be applied to the present case, for the reason, among others, that there was in the case of The People v.Jansen *Page 521 
no collateral interest to be affected as that presented by the towns in cases like this. It is no answer to say that there would be no loss by the town in this case, because the principle, if sound, must have a general application. The statute could not be construed as imperative in a case like this, and merely directory in a case where, otherwise, the town would be a loser.
My conclusion, therefore, is that the judgment of the Supreme Court should be affirmed.