INHABITANTS OF CUMBERLAND Co. *vs.* THOMAS PENNELL & others.

Androscoggin. Opinion April 21, 1879.

*County treasurer,—responsibility of. Robbery as defense. County commissioners,—authority of. Evidence.*

The responsibility of a county treasurer, in the absence of any statute enlarging it, is measured by the common law rule applicable to bailees for hire other than common carriers and innholders.

The statute official bond of a county treasurer does not increase his responsibility; but its office is to secure the performance of his legal obligations.

If, without fault or negligence on his part, a county treasurer is violently robbed of money belonging to the county, it is a valid defense, *pro tanto,* to an action upon his official bond.

The burden of proving such defense is upon the defendants.

Evidence that the treasurer used a safe placed in the treasurer's office for his use by the county commissioners, is immaterial.

The commissioners have no authority to release a treasurer from responsibility.

ON EXCEPTIONS.

DEBT upon the official bond of Thomas Pennell as treasurer of the county of Cumberland, for the year 1874, executed by Pennell as principal and the other defendants as sureties, containing the following condition : " The condition of this obligation is such that whereas the said Thomas Pennell has been duly elected to the office of county treasurer of said county and entered upon the duties thereof; now, if the said Thomas Pennell shall well and faithfully attend to the duties of said office and perform all things required by said office to be performed, from the first day of January, 1874, to the first day of January, 1875, the term to which he has been elected, then this obligation to be void ; otherwise to remain in full force and virtue."

The defendants pleaded *non est factum*; with a brief statement setting out the conditions of the bond, and alleging in substance that Pennell performed the conditions therein contained according to the form and effect thereof; that he well and truly attended to the duties of, and performed all things required by, said office of county treasurer to be performed, from January 1, 1874, to January 1, 1875; that during that time, he applied all moneys received by him to the use of the county in defraying its expenses as directed by the county commissioners and the supreme judicial court by their written orders therefor; that he paid over to the treasurer of the law library association of the county, all moneys received of persons admitted as attorneys in the supreme judicial court; that during said term, annually, and as often as required by the commissioners, he exhibited an account of all moneys and effects belonging to the county, holden by him as treasurer, to the commissioners for adjustment, and the same was adjusted by them; that he has accounted with them for all receipts and payments during said time; and that he has performed all the duties prescribed in R. S., c. 8, and all other acts and statutes of the state applicable thereto.

That the plaintiffs provided a certain room in the city building in Portland, to be used as an office by the county treasurer, and placed therein a safe for the purpose of depositing and keeping therein the moneys and effects belonging to said county and received by the county treasurer; that Pennell placed the moneys and effects of said county in said safe, that being the only place provided by the county for the depositing and keeping of the same; that on the thirtieth day of December, 1874, the said Thomas Pennell being in said room occupied by the treasurer of said county, was suddenly set upon by robbers and instantly overpowered and rendered senseless and unconscious by reason of the violence and injury then and there inflicted upon him by said robbers, and that while the said Pennell was so senseless and unconscious the safe containing said moneys and effects was feloniously and burglariously broken open by said robbers, and said moneys and effects then and there belonging to said county were then and there feloniously and burglariously taken from said safe by said

robbers and carried away, against the will of said Pennell; and that said Pennell has never been able to recover possession of said moneys and effects from said robbers or from any other person, for said county, and from that time has never had possession or control of said moneys and effects or the means of acquiring possession and control thereof, and that said Pennell at the time of said robbery and at all times prior thereto was in the exercise of due care; that said robbery was without fault or negligence on the part of said Pennell, and that if said loss and robbery of said money and effects were occasioned by the fault of any party, it was through the fault and want of care and precaution on the part of the plaintiffs, in whose care and management said money and effects then were, and not on the part of said Pennell.

That the plaintiffs caused said loss and contributed thereto by reason of the room and safe provided by them being improper and unsafe and insufficient for the purposes aforesaid of said county.

That the said Pennell has accounted with the commissioners of said county of Cumberland for all moneys and effects so feloniously and burglariously robbed from said safe, and has paid over as required by law all moneys and effects received by him, so far as by the law under his said bond he is required to do, and that subsequently, to wit, on December 31, 1874, the said Pennell adjusted with the county commissioners of said county his account of all money and effects received by him for said county, during his term of office as treasurer of said county, from January 1, 1874, to January 1, 1875.

That if said Pennell has not actually paid over money or effects belonging to said county, received by him as treasurer, that said money or effects were feloniously and burglariously stolen and taken from said safe of said county in the manner and through the means as aforesaid.

The plaintiffs, by counter brief statement specifically denied every allegation in the defendants' brief statement, alleging, *inter alia*, that the said Thomas Pennell as the treasurer of said county of Cumberland, during the time named in said bond, had and received divers sums of money amounting in the whole to a large

sum of money, to wit, the sum of ten thousand eight hundred and twenty-three dollars and forty-one cents belonging to the plaintiffs and for the use of said county, and hath not accounted for and paid to the plaintiffs the same or any part thereof, although often requested so to do, but hath therein wholly failed and made default; and the said sums of money so had and received by the said Thoms Pennell as aforesaid in his capacity of treasurer of said county as aforesaid are still wholly unpaid and unsatisfied to said plaintiffs, contrary to the form and effect of the said condition of the said writing obligatory.

That if the said moneys and effects were feloniously and burglariously stolen from said Pennell in the manner set forth in his brief statement, which is denied, such a robbery would not be a valid defense to this action.

The plaintiffs introduced in evidence the bond declared on and the testimony of the county commissioners tending to show that in their settlement with the treasurer he said that he had been robbed of a certain sum of money belonging to the county, to wit, $9,973.95; that a room was provided by the county for the treasurer at the extreme end of the west corridor in the city building; that the county commissioners provided for the taking care of the room as they did of all the county offices and owned all the furniture, including a Tilton & McFarland safe, having a plate on its front containing the words, " Manufactured for Cumberland County Treasury;" that a demand was duly made. There was also put into the case the settlement with Pennell by the commissioners, at the end of which was the following certificate in the handwriting of Pennell but signed by the commissioners:

" Cumberland ss. January 21, 1875. This may certify that we have examined the accounts of Thomas Pennell from October 1, 1874, to December 31, 1874, and find them correctly cast·and properly vouched for, and the balance due the county is thirty thousand seven hundred and eighty-one dollars and four cents, and we find that there is now in the treasury the sum of twenty thousand eight hundred and seven dollars and nine cents, which has been paid over to Roscoe G. Harding, county treasurer for

1875, and the balance, being nine thousand nine hundred seventy-three dollars and ninety-five cents, was robbed from the treasury on December 30, 1874."

The defendants put in plans showing the locality of the treasurer's office and its surroundings.

The defendants offered testimony tending to show that the safe was put into the treasurer's office in 1868 by the county commissioners for the purpose of depositing and keeping the moneys and effects of the county therein ; that the moneys and effects of the county were usually deposited in the safe ; that the new safe was substituted for an old one ; all of which was excluded.

The defendants offered to prove that the money claimed by the plaintiffs in this suit to the amount of $10,823.41, was taken by robbery on the evening of the thirtieth day of December, 1874 ; that on said thirtieth day of December, 1874, the said Thomas Pennell being in said room occupied by said Thomas Pennell as the treasurer of said county, at about six o'clock in the evening was suddenly set upon by two robbers and instantly overpowered and rendered senseless and unconscious by reason of the violence then inflicted upon him by said robbers ; that while the said Pennell was so senseless and unconscious, the safe in said office, in which said moneys and effects had been placed by said Pennell, was feloniously and burglariously opened by said robbers, the door of said safe being closed and the bolts turned, but not locked, and said money then and there in said safe was then and there taken by said robbers and carried away against the will of said Pennell ; that said Pennell has never been able to recover any part thereof ; and that said robbery was without the fault or negligence of said Pennell.

Thereupon, the presiding justice ruled " that, assuming the robbery proved as offered by the defendants without the fault of the plaintiffs, it would constitute no defense to this action."

The court further ruled as matter of law that the plaintiffs were entitled to recover interest on the amount of the deficiency from the first day of January, 1875. Thereupon a *pro forma* verdict was rendered for the plaintiffs in the sum of $10,823.41 (which comprised the amount alleged to have been stolen, together with

balance of errors in the settlement) with interest on same, amounting in all to $11,574.78.

The case was then marked law with the stipulation that, if the rulings of the presiding justice upon the questions of law shall not be sustained; or if the evidence of the robbery without fault on the part of the treasurer, together with the evidence reported and that offered and rejected which is legally admissible, would constitute a defense, or would authorize a jury to find in favor of the defendants, the verdict should be set aside and the action stand for trial.

*Bion Bradbury & C. F. Libby*, for the plaintiffs, contended:

I. That a depositary of public funds cannot avail himself of the ordinary circumstance which would discharge a bailee for hire, by reason of an imperative principle of public policy. This policy is founded in the danger of collusive defenses which the depositary could easily manage so as to make a strong case and which the government could have no means of rebutting, however false or simulated it might be. It has, therefore, been thought better to hold the party to the absolute payment or delivery of the money than to open the door to such frauds.

II. That by giving a bond in a penal sum for the performance of all the duties of his office without exception, the depositary makes himself by express contract an insurer of the public funds in his hands. *U. S.* v. *Prescott*, 3 How. 578. *U. S.* v. *Morgan*, 11 How. 154. *U. S.* v. *Dashiel*, 4 Wall. 185. *U. S.* v. *Keehler*, 9 Wall. 83. *U. S.* v. *Boyden*, 13 Wall. 17. *U. S.* v. *Bevans*, 13 Wall. 56. *U. S.* v. *Halliburton*, 13 Wall. 63. *Muzzy* v. *Shattuck*, 1 Denio, 233. *State* v. *Harper*, 6 Ohio St. 607. *Commonwealth.* v. *Comly*, 3 Barr. (Penn.) 372. *Union* v. *Smith*, 39 Iowa, 9. *Hancock* v. *Hazzard*, 12 Cush. 112. Whart. Neg. § 290.

The failure of Pennell to account for and pay over to the county the sum sued for, made him a defaulter, and his default dates from the expiration of his official term, and failure to account for all money "received by him for the use of the county." R. S., c. 8, §§ 7 and 16.

His duty to pay over the county's money at the expiration of his official term is independent of any statute provision. It results from the nature of his office, of which this is one of the plainest duties implied by the law.

His statement in the certificate signed by the county commissioners that "the balance being $9,973.95 was robbed from the treasury December 30, 1874" is not a legal accounting for the funds in his hands. The commissioners could not pass upon such a defense.

A sufficient demand for accounting appears, and interest follows the default to pay over the balance at the expiration of the term, December 31, 1875.

*A. A. Strout, G. F. Holmes, (Frye, Cotton & White,* with them) for the defendants.

VIRGIN, J. Debt on the official bond of Thomas Pennell as treasurer of the county of Cumberland, executed by him as principal with the other defendants as his sureties, and conditioned that he "shall well and faithfully attend to the duties of said office, and perform all things required by said office to be performed, from the first day of January, 1874, to the first day of January, 1875, the term to which he has been elected."

Under the brief statement pleaded, the defendants offered to prove, in substance, that on December 30, 1874, while Pennell was sitting in the treasurer's office, with the door of the safe therein closed and bolted but not locked, he was suddenly and violently beset, overpowered and rendered senseless by robbers, who, thereupon, against his will and without his fault, burglariously opened the safe and feloniously took and carried away therefrom, the sum of money belonging to the county not paid over by him at the close of his official term, and for the recovery of which this action was brought.

The presiding justice ruled that, assuming the robbery proved as offered, it would constitute no defense. The main question for decision involves the correctness of that ruling.

As the money was taken from the safe in the treasurer's office, no question relating to the ownership of bank deposits arises.

Counties are *quasi* corporations possessing but few powers and requiring a small number of officers. The general financial agents of a county are its county commissioners, whose powers and duties are prescribed by the statute. They have the care of its property and the management of its business; cause its taxes to be assessed; obtain loans for its use; order its money to be paid in defraying its expenses; and examine, allow and settle accounts of the receipts and expenditure of its moneys. R. S., c. 78, § 10. They act under oath but give no bond.

The moneys of the county are kept and handled only by the treasurer. He is required to be sworn and give a bond " for the faithful discharge of his duties in such sum as the commissioners order, and with such sureties as they approve." R. S., c. 8, § 4.

Moreover the statute also requires that every county treasurer, " holding any money or effects belonging to his county, shall annually and oftener if required, exhibit an account thereof to the county commissioners for adjustment." R. S., c. 8, § 16. In fact all the language of the statute relating to the subject matter, is predicated upon the idea that the moneys which come into the official custody of the county treasurer, are not his own private funds, but the county's; and that they remain so until legally paid out. R. S., c. 78, § 10. *Mechanics' Bank* v. *Hallowell*, 52 Maine, 545. If Pennell, instead of being robbed, had been sued and the money attached the attaching creditor would hardly expect to hold it; or if he had suddenly died, his successor in office would not have delivered over the money in the safe to Pennell's personal representative. *Thompson* v. *White*, 45 Maine, 445.

Experience had taught the people of this state that public treasurers with comparatively small salaries are sometimes tempted to try to increase the emoluments of their trust by using the money coming into their possession *virtute officii* for purposes of speculation not always financially successful; or by loaning it to friends who cannot always meet the notes given therefor. Consequently a statute, (Stat. 1860, c. 161, embodied in R. S., c. 120, § 7,) directed against such abuses, and entitled " an act to prevent the embezzlement of public money," was enacted, making such acts larceny and punishable accordingly. If, however, the

" money in the possession of the treasurer or under his control by virtue of his office " be his own and not the county's, then we have the anomaly of a person being liable to be indicted and punished for larceny for using or loaning his own money.

In some of the states, however, by force of their statutes, treasurers and collectors become responsible as debtors for the money which comes into their possession by virtue of their office. *Colerain* v. *Bell*, 9 Met. 499,—a case against a collector. *Hancock* v. *Hazzard*, 12 Cush. 112,—against a town treasurer. *Muzzey* v. *Shattuck*, 1 Denio, (N. Y.) 233,—against a collector. This last case was approved in *Looney* v. *Hughes*, 26 N. Y. 514, and in *Perley* v. *Muskegon*, 32 Mich. 132,—case against a county treasurer. We have no such statute as this relating to county treasurers; and as before remarked, the money which comes to their official custody, is public and not private property.

The office of county treasurer is a public office ; and we have sought in vain to find something in the common law which distinguished a public treasurer or depositary from other custodians of property, public or private. In some jurisdictions his duties and his responsibilities even have been increased and multiplied by various provisions of statutes; but in the absence of such statutory provisions, his duties and obligations remain where the common law of bailment leaves them.

In this state, the official duties of the county treasurer are prescribed in part by the common law and in part by the statute ; the provisions of the latter more particularly defining his special duties, leaving his general duties unmodified. When the treasurer elect accepts his office, he thereby takes upon himself all the duties thereof, general as well as special. His general duties, arising from the very nature of his office, are to receive the money of the county lawfully deposited with him, keep it safely and pay it out according to law. *State* v. *Harper*, 6 Ohio St. 607. From these general duties accepted springs a legal obligation that he will bring to their performance good faith and reasonable skill and diligence ; to enforce which, the statute already referred to requires him to take upon himself the moral obligation of an oath that he will faithfully perform the duties which he has assumed,

and give a bond with sureties with a condition of like import. R. S., c. 8, § 4.

As already intimated, the responsibility of the county treasurer, in the absence of any statute enlarging it, is measured by the common law rule applicable to bailees for hire other than common carriers and innholders. He is bound, *virtute officii,* to exercise good faith and reasonable skill and diligence in the discharge of his trust; or, in other words, to bring to its discharge that prudence, caution and attention which careful men usually exercise in the management of their own affairs; and he is not responsible for any loss occurring without any fault on his part. That this substantially is the rule by which the common law measures the responsibility of those whose official duties require them to have the custody of property, public or private—such as officers of courts having the custody of the property of suitors therein; trustees, except when they mix the trust property with their own, whereby the identity of the former is lost; marshals, appointed by courts of admiralty to take care of vessels and cargoes; receivers, etc., etc.,—is amply illustrated by the numerous authorities cited by Bradley, J., in *U. S.* v. *Thomas,* 15 Wall. 337, 343, 344. See also 1 Perry on Trusts, § 441, and notes.

Sheriffs, however, will not be excused for the escape of a person under arrest, although an armed multitude break the jail and rescue him; for the sheriff has the power of the county at his beck, to aid him in the execution of precepts; and " the law supposes the *posse* to be a sufficient defense against a rescue, and that no force is able to resist successfully the sheriff and his *posse.*" Fortescue, J., in *Crompton* v. *Ward,* 1 Strange, 430. Whether a sheriff is held to the same strict accountability in relation to property attached or money collected, is both declared and denied by high authorities. Story Bailment, § 130. *Browning* v. *Hanford,* 5 Hill (N. Y.), 588. S. C. in error, 5 Denio, 586, and cases cited in the chancellor's opinion. *Moore* v. *Westervelt,* 21 N. Y. 103. *Phillips* v. *Lamar,* 27 Ga. 228. Some authorities make a distinction between property attached on mesne process and that seized on execution. *Bridges* v. *Perry,* 14 Vt. 262. *Briggs* v. *Taylor,* 28 Vt. 180. In the latter case, Redfield, J., says: " The

degree of diligence required of sheriffs is that of a bailee for hire, which is that which the manner and nature of his employment make it reasonable to expect of him as a prudent and careful man." The authorities are the other way in Missouri. *State* v. *Gatzweller*, 49 Mo. 26.

Executors' and administrators' responsibility is measured by that of trustees. "They are liable only for want of due care and watchfulness, and reasonable skill and prudence." 3 Redf. Wills, 394.

The rigorous rule governing a common carrier—one whose general occupation is the carrying for hire—has for a long time been established, and it is said to have been founded in necessity. He is self-appointed. Being unknown to his employers and not employed in special confidence, he must answer for all the risks which the salutary rule requires; otherwise protection against combinations between such unknown persons and others with whom they might collude, would be impracticable. But a county treasurer is not of this description. He is selected by the people in special confidence, to receive their money and disburse it as the statute directs. For an honest and prudent discharge of these plain and well known duties his stipulation with the law binds him and his employers (constituents) pay him. His comparatively small salary shows that he is no insurer. And for any losses that happen outside of this obligation, without any fault of his, the inhabitants of the county must bear.

Of course, the legislature may at will, by general statute, change this rule of responsibility of public officers, as it can, within certain well known constitutional limits, any other rule of common law. The office being created by the statute, it may be subjected to any reasonable conditions by the statute. A change of the rule, however, will not result necessarily from an addition of new duties. We look in vain through the ten additional sections of R. S., c. 2, enacted in 1856, "for the better security of moneys in the state treasury," for any change in the degree of responsibility of the state treasurer. To effect this, some provision is necessary which clearly shows the intention of dealing with that subject matter as distinguished from mere duty. It may be

done in various ways. A positive provision to that effect will accomplish it. Thus R. S., c. 63, §15, after prescribing the conditions of the bond of a register of probate, provides : " And if he neglects to complete his records for more than six months at any one time, sickness or any extraordinary casualty excepted, such neglect shall be adjudged a forfeiture of his bond." So by Stat. 1877, c. 168, § 1, " any neglect by any county treasurer to make and forward the report provided in R. S., c. 136, § 13, shall be a breach of his official bond." So in Indiana, after prescribing the duties of county treasurers, the statute of that state provides that, " if any county treasurer shall neglect or refuse to pay over all moneys as provided herein, he and his sureties shall be liable for the full amount which he should have paid over, together with interest and ten per cent damages." 1 G. & H. 68, § 127. So the U. S. statutes are very rigorous in relation to collectors, receivers and depositaries of public money, which may be found cited in the notes on page 346 in 15 Wall. See also the statute of N. Y. which imposes a definite liability on town collectors and their sureties, recited in *Muzzey* v. *Shattuck*, 1 Denio, 233, 236–8. So the statute of Ohio, in force when *State* v. *Harper*, 6 Ohio St. 607, was decided, provided (§ 24): " If any county treasurer shall fail to pay over all money with which he shall stand charged . . . suit may be instituted against him and his sureties ; and it is made lawful for the court, at the first term thereafter, to render judgment against them for the amount due from such treasurer, with legal interest and a penalty of ten per cent thereon, from which judgment there shall be no appeal, or stay of execution ; and the property of such delinquent treasurer and his sureties may be sold without appraisement."

The legislature of this state has never expressed such intense solicitude in relation to their public money in the hands of their treasurers.

Such then being the extent of the treasurer's responsibility at common law, and there being no statute increasing it, unless it arises from the bond which the statute requires him to give, we pass to an inquiry into the effect which his bond has upon his obligations.

As already seen the statute requires a bond stipulating " for the faithful discharge of his duties." This being the only condition, recourse must be had to the common and statute law for a specification of his duties. *Bevans* v. *United States,* 13 Wall. 61. The tender of a bond containing that condition, " in such sum as the commissioners order and with such sureties as they approve in writing," entitles the treasurer elect, after taking the statute oath, to enter upon the discharge of his official duties. He might enter into a common law bond containing stipulations making him liable at all hazards. But one requiring of him more than a " faithful discharge of his duties " cannot be demanded of him as a condition precedent to his being allowed to hold the office. The same requirement is made of town treasurers (R. S., c. 6, § 151); of collectors (c. 6, § 100); of treasurers of savings institutions (c. 47, § 89); of receivers of banks (c. 47, § 61); and in fact of all official depositaries who receive and disburse the funds of their respective constituents.

In 1845, in *United States* v. *Prescott,* 3 How. 578, it was decided in substance that, while a receiver or other depositary of the public funds is a bailee, he is a special bailee; made such by his bond which constituted him an insurer; and that public policy required the party to be held absolutely. This case was followed, with more or less consistency, by numerous cases, in various jurisdictions, in which the question was directly or indirectly involved; among them the following : *U. S.* v. *Morgan,* 11 How. 162. *U. S.* v. *Dashiel,* 4 Wall. 182. *U. S.* v. *Keehler,* 9 Wall. 83. *Boyden* v. *U. S.* 13 Wall. 17. *Bevans* v. *U. S.* 13 Wall. 56. *U. S.* v. *Thomas,* 15 Wall. 337. *Commonwealth* v. *Comly,* 8 Penn. St. 372. *State* v. *Harper,* 6 Ohio St. 607. *New Providence* v. *McEachron,* 4 Vroom (N. J.), 339. *Taylor* v. *Morton,* 37 Iowa, 550. *Union* v. *Smith,* 39 Iowa, 9. *Halbert* v. *State,* 22 Ind. 125. *Morbec* v. *State,* 28 Ind. 86. *Roch* v. *Stinger,* 36 Ind. 346. *Steinbach* v. *State,* 38 Ind. 483. *Perley* v. *Muskegon,* 32 Mich. 132.

All this long array of cases follow and, so far as the point under examination is concerned, depend upon *U. S.* v. *Prescott, supra* ; " prior to which," says Miller, J., " I do not believe

there was any principle of public policy recognized by the courts, or imposed by the law, which made a depositary of the public money liable for it, when it has been lost or destroyed without any fault, or negligence, or fraud on his part, and when he had faithfully discharged his duty in regard to its custody and safe keeping." *U. S.* v. *Thomas,* 15 Wall. 354. To a similar purport, see opinion of Cowen, J., in *Browning* v. *Hanford,* 5 Hill (N. Y.), 591. And still the doctrine is strenuously urged for holding depositaries (as it is said) " strictly to the contract; " " for," say the court in *Commonwealth* v. *Comly, supra,* " if they were to be let off on shallow pretenses, delinquencies, which are fearfully frequent already, would become incessant." Every one will concur in this statement literally construed as an abstract proposition; but when "shallow pretenses" are intended to include robbery without fault of the officer robbed, we are compelled to withhold our concurrence.

Notwithstanding the high character of the several courts whose decisions are above cited, we cannot yield our convictions as to the construction to be given to the bond in such case, or concur in relation to the new-born public policy, based upon supposed facility or temptation, which depositaries of the public money are said to possess, for collusive robberies. " For," as was said by Readfield, J., in *Bridges* v. *Perry,* 14 Vt. 262, " we cannot believe that they are founded upon any just warrant, either of sound judgment or constant experience." Even that old doctrine which the law by necessity imposed in early times upon common carriers has practically become obsolete, since they are allowed to mitigate that original rigorous accountability by any stipulations which stop short of an excuse for their own negligence.

On the contrary, this is the first case in this state in which the " shallow pretense " of robbery, without fault on his part, has been interposed by a treasurer in an action upon his official bond; ever since the decision of *Potter* v. *Titcomb,* 7 Maine, 302, the people of this state have entertained a different view from that promulgated for the first time in *U. S.* v. *Prescott,* as to the effect of an official bond stipulating for a " faithful discharge " of official duties. In the case last cited, Mellen, C. J., in discussing the

nature of official bonds and the accountability of sureties thereon, said : " The design of all official bonds is to secure from losses those who are or may be interested in the faithful discharge of the duties mentioned in them. Such bonds are given to protect against damage occasioned by unfaithfulness, negligence or dishonesty in such officers. . . Sureties on such bonds are, in some respects, like underwriters upon the pecuniary responsibility and official fidelity of their principals."

So, in speaking of the official bond of the state treasurer, Appleton, C. J., in *Mechanics' Bank* v. *Hallowell, supra,* said : " The bond required is not so much for the moneys as for the faithful discharge of his duties in reference thereto. For the one, it would be entirely inadequate; while for the other, it might be amply sufficient."

So Miller, J., in the opinion already quoted from, while speaking of *U. S.* v. *Prescott,* and *U. S.* v. *Morgan,* said : " When the case of *U. S.* v. *Dashiel, supra,* came before the court, I was not satisfied with the doctrine of the former cases. I do not believe now that, on sound principle, the bond should be construed to extend the obligation of the depositary beyond what the law imposes upon him, though it may contain words of express promise to pay over the money. I think the true construction of such a promise is to pay when the law would require it of the receiver, if no bond had been given ; the object of taking the bond being to obtain sureties for the performance of that obligation." He then adds what we have heretofore quoted.

Such a construction has been put upon the bond of bank-tellers (*Union Bank* v. *Clossey,* 10 Johns. 27 ; S. C. 11 Johns. 182. *American Bank* v. *Adams,* 12 Pick. 303) ; and that of cashiers (*Minor* v. *Mechanics' Bank,* 1 Pet. 46, 69. *Commercial Bank* v. *Ten Eyck,* 48 N. Y. 305).

The doctrine that the official bond of a public depositary rendered him an insurer of the public funds in his possession is nowhere recognized by Judge Story. On the contrary, he was of the opinion that robbery is a good defense. Col. John L. Tuttle, a U. S. paymaster, was murdered and robbed of the public funds in his official custody, and an action was brought therefor against

Samuel Hoar, Jr., as administrator of Tuttle's estate. In the trial of the action at the May term, 1822, of the U. S. C. C. in Boston, the defense of robbery was set up, and the jury, under the instructions of Judge Story presiding, returned a verdict for the defendant—showing that the court must have ruled that robbery was a good defense. It seems the question was not carried any further and hence the case was not reported. In *U. S.* v. *Hoar*, tried the year before, and reported in 2 Mass. 311, other questions were raised.

In New York, in an action on a county treasurer's bond, conditioned that he would "faithfully execute the duties of said office, pay according to law all moneys which shall come into his hands treasurer, and render a just and true account thereof," etc., the supreme court, comprising Nelson, C. J., and Bronson and Cowen, JJ., held the treasurer's liability limited by the common law rule; and that he was not responsible for money stolen from the treasurer's office without any fault on his part. *Albany* v. *Dorr*, 25 Wend. 438. This case was affirmed by the court of errors, though by an equally divided court, Chancellor Walworth voting for affirmance. 7 Hill, 584. Note *a*.

Subsequently, in an action on a town collector's bond, the same court, consisting of Bronson, C. J., and Beardsley and Jewett, JJ., held the collector liable under the same circumstances. After an elaborate analysis of the statutes pertaining to collectors,—one provision of which is that the bond shall be a lien on the real estate of the collector, and of his sureties, till the condition be fully satisfied—the court said: "The statute imposes a definite liability on the collector and his sureties for the omission to collect and pay; and whether that omission is the result of misfeasance or neglect, unavoidable accident or felony committed by another, we do not think it furnishes any defense to the action." *Muzzey* v. *Shattuck*, 1 Denio, 233. The decision of this case is thus placed expressly upon the provisions of the statute relating to collectors. It was cited with approbation, so far as the reasoning is concerned, in *Looney* v. *Hughes*, 26 N. Y. 514, which was also an action on a collector's bond. Selden, J., speaking for the court, said: "The bond itself is a creature of the statute. Its

form is prescribed by the statute. Independently of any statutory provisions on the subject, the obligors in such bond would only be liable to pay the damages which might accrue in consequence of any default upon the part of the collector. The conclusion is the necessary result of the provisions of the statute," citing *Muzzey* v. *Shattuck.*

*Albany* v. *Dorr* and *Muzzey* v. *Shattuck* are thus decided upon distinct and independent grounds, and are not inconsistent. The former is alluded to in the latter, but in nowise overruled, and has been cited with approbation as already stated *ubi supra.*

So in England, in an action by the trustees of a Benefit Building Society, established and organized under the statutes 6 and 7, W. 4, c. 32, and 10 G. 4, c. 56, against the sureties of the treasurer, the court of Q. B. in 1852, held the same doctrine contended for. The treasurer covenanted, *inter alia*, that he would "faithfully discharge all the duties of treasurer;" obey the directions and instructions of the trustees in all particulars relating to his duties; and, in particular, would faithfully and punctually account to them for all moneys, etc., which he in his office should receive. He was also required by the rules of the society to pay over in a given time the same moneys received. The defendants pleaded, *inter alia*, that, after the treasurer's receipt of the money sought to be recovered, and before the time when he ought to pay it over, he, without any fault on his part, was violently robbed of all said money; and that thereby he was unavoidably, without his fault, prevented from paying over the same. On the trial of an issue joined on these facts as alleged, the jury returned a verdict for the defendants.

On motion for judgment for the plaintiffs, *non obstante veredicto*, it was urged that a loss by robbery is not an "accounting" within the covenant; that money once received by the treasurer constituted a debt not dischargeable by the debtor's loss however unavoidable; that he is treated as a debtor by St. 10 G. 4, c. 56, §§ 20, 22 ; that, if bailee, the treasurer's liability is not less than that of a carrier or innkeeper; and that the intention of the statutes is, at all events, to protect the funds of poor people intrusting them to these societies. But Lord Campbell, C. J., and Wight-

man, Erle and Crompton, JJ., who sat, overruled the motion, unanimously declaring that they entertained no doubts upon the points. *Walker* v. *British Guar. Ass.*, 18 Ad. & E. (N. S.) (83 E. C. L.), 276.

We consider the English case cited as directly in point and correctly decided. Were the law otherwise in this state, and known to be such, faithfulness and honesty, even if they continued to be considered commendable personal qualities, would be held, if not mere abstractions, matters of secondary importance at best in candidates. Such qualifications, accompanied by the highest capability, would, in the absence of sufficient property in the principal to secure his sureties, fail to obtain them. For many a responsible person would gladly sign a bond as surety, guarantying the faithfulness, honesty and capacity of his neighbor which were so potent in effecting his election to the responsible public station of county treasurer, who would long hesitate to insure the public against possible loss happening in spite of such qualities; for to insure against such a loss is not only vouching for the integrity of the officer, but practically for that of the rest of mankind—that they will not rob him.

After the promulgation of the contrary doctrine, it was deemed so unjust, harsh and oppressive that congress enacted a statute (14 U. S. St. 44) authorizing the court of claims to hear and determine the claims of a disbursing officer for relief; and, in case the loss be found to be without fault or negligence on the part of such officer, to make a decree setting forth the amount thereof, which shall be allowed as a credit by the accounting officers of the treasury in the settlement of his accounts,—thus practically overruling the decisions not allowing losses thus occurring to be set up in defense. We have no such court in this state. Our only courts of claims are the supreme and the superior courts. And we do not perceive why such a loss cannot be set up in defense, if it be a proper subject for a claim to be allowed. Of course the burden is upon the defendant. If he can satisfy the jury that he was violently robbed, without any fault or negligence on his part, it is quite as well as to try the same issue in the form of a claim before some other tribunal.

The fact that the treasurer used the safe placed in the treasurer's office by the county commissioners, for the depositing of the money and other effects of the county therein, was no defense and rightly excluded. As already seen, the commissioners, like selectmen of a town, have limited powers. They have no control of the money of the county, though they "examine, allow and settle accounts of the receipts and disbursements of" it, and "have the care of its property and the management of its business." R. S., c. 78, § 10. But the treasurer keeps and handles the money; and, in doing this, he acts on his own responsibility and independently of the commissioners. They are creatures of the statute, but find therein no authority to direct how, where or in what manner the funds shall be kept. If they could require him to keep the funds in a safe placed by them in the treasurer's office, they could also compel him to place them elsewhere; and thus absolve him from the necessity of exercising his own discretion, prudence and diligence, and relieve him from all responsibility in that behalf. On the contrary, it is optional with him to keep the funds wherever he deems it expedient; and by keeping them in the safe placed there for his convenience simply, he assumed the risk of so doing. The commissioners could not thus bind the county any more than the selectmen can their town. *Farmington* v. *Stanley*, 60 Maine, 472. Nor could they release their treasurer from any liability arising from the use of the safe, if he thereby through negligence incurred any. See *Halbert* v. *State, supra*, precisely in point.

Our conclusion therefore is, that the treasurer's degree of responsibility was simply that which the common law imposed upon him as bailee for hire; that the statute of this state did not extend or enlarge it; that his official bond does not increase his responsibility, but simply affords security for the performance of his legal obligations; that if, without fault or negligence on his part, the county treasurer is violently robbed of money belonging to the county, it is a valid defense, *pro tanto*, to an action upon his official bond; that the burden of proving such a defense is upon the defendants; that evidence that the treasurer used a safe placed in the treasurer's office for his use by the county commis-

sioners, is immaterial; and that the commissioners have no authority to release a treasurer from responsibility.

If the people, who elect their own depositaries and place money in their hands, are willing to continue it there subject only to such obligation, and do not conclude to change it by legislative enactment, we do not conceive it to be our duty to make an imaginary public policy, never until recently recognized by any court, the cause for creating a new obligation by judicial legislation.

*Exceptions sustained.*
*Action to stand for trial.*

WALTON, DICKERSON, BARROWS and PETERS, JJ., concurred.

APPLETON, C. J., DANFORTH and LIBBEY, JJ., did not concur.